## The Minnesota Mining Company v. The National Mining Company.

The Act of Congress of March 1, 1847, "to establish a land office in the northern part of Michigan," &c., (9 Stat. at Large, 146) does not authorize by pre-emption or otherwise, the sale by the United States of any lands which, on survey, might fall within section sixteen.

A judgment will not be reversed for the admission of evidence from which no injury could result to the plaintiff in error.

*Heard November 28th and 29th, 1862. Decided January 13th.*

Error to the District Court of the Upper Peninsula, for the county of Ontonagon. The case is sufficiently stated in the opinion.

*S. T. Douglass,* and *T. Romeyn,* for plaintiffs in error.

*A. W. Buel,* for defendants in error.

CHRISTIANCY J.:

This was an action of ejectment, brought by the plaintiffs below (plaintiffs in error) to recover a portion of section sixteen in township fifty north of range thirty - nine west, in the Lake Superior Land District.

The plaintiffs claim under a patent from the United States, issued April 9th, 1852, purporting to convey the lands in question (together with a large · amount of lands on other sections in the same township, not here in controversy). By the evidence in the case, this patent appears to have been issued upon a pre-emption purchase under the act of March 1st, 1847 : — 9 *U. S. Stat. at Large, p.* 146. The patent recites that full payment has been made according to the provisions of this act, and the act of September 26, 1850, reducing the minimum price of the mineral lands. The act last referred to has no bearing upon any question raised in this case. The patent contains an express reservation of "any right which the State of Michigan may have in and to" the lands on section sixteen mentioned in the patent, "under or by virtue of the provisions of the first section of the act of Congress of the 23d day of June, 1836, entitled "an act supplementary to the act entitled an act to establish the northern boundary line of the State of Ohio, and to provide for the admission of the State of Michigan into the Union on certain conditions."

By this act (which, being accepted by the State, became an irrevocable ordinance, binding as well upon the Federal

Government as the State), it is provided, that "section numbered sixteen in every township of the public lands, and when such section has been sold or otherwise disposed of, other lands equivalent thereto and as contiguous as may be, shall be granted to the State for the use of schools."

The plaintiffs' counsel insist that, until the sixteenth section has been identified by survey of the public lands, the title of the State can not attach to the specific lands; that the Federal Government have therefore the power to dispose of portions of the public domain, before such surveys have been made, and that if it turn out, upon survey, that section sixteen has been thus disposed of, the obligation of the Federal Government to the State is fully performed by giving to the State other lands equivalent thereto: he admits however that if not thus disposed of, the title of the State would attach at once upon the completion and return of the surveys.

Upon this theory, and to show that the United States had made an inchoate disposition of these lands which was binding upon them, and that the rights of the parties under whom the plaintiffs claim had attached before the survey, and that the lands were thus taken out of the operation of the grant to the State, the plaintiffs, on the trial, proved that the lands were not duly surveyed and, the survey returned until the Autumn of the year 1847: That on the 5th day of August, 1844, a written permit was given by the mineral agent of the United States, to Joseph L. Hempstead, under whom plaintiffs' claim, to dig for ores, &c. That a selection for the purpose of mining being duly made under this permit, of a tract including the land in question, the Secretary of War, on the sixteenth day of September, 1845, gave to said Hempstead a written lease of the land for three years from that day.

It is admitted by the plaintiffs' counsel that this lease (like all other similar leases of the mineral lands in

the Lake Superior Copper Mining District, executed by the Secretary of War), was entirely invalid at the time of its execution, being executed without authority of law. But it is insisted that, while the term which it purported to create was still unexpired, this lease (with other similar leases) was ratified and confirmed by the act of Congress of March 1, 1847, already alluded to. It was shown upon the trial that the lands in question were, in November, 1849, reported by the Geological Surveyor of the United States, to the Secretary of the Interior, as mineral lands. And it is insisted that, by this act of 1847, a right of pre-emption was given to the lessee and his assigns to enter and purchase these lands at any time during the continuance of the lease, by showing a full compliance with its conditions and terms. The plaintiffs also sought to show that they had made the necessary application and proof, before the proper officers, to entitle them to the pre-emption under the act; and though made after the expiration of the lease, they have undertaken to show that they did all that it was competent for them to do; that the delay was caused by the Government, and that the lease was extended until the entry was completed.

For the purposes of the present case, it may be admitted that the plaintiffs had fully complied with the terms and conditions of the lease; that their application and proofs were made in due season; full payment made, and every thing done by them to entitle them to a patent under this act, if the act extends to the case, and authorizes a sale by the United States of the lands in question. But after a full and careful examination of this act, in connection with that of June 23d, 1836, and of the whole policy of the Government towards the new States from its origin, as evinced by its legislation, we are entirely satisfied that the act of March 1, 1847, does not extend to this case, and was never intended to authorize, by pre-emption or otherwise, the sale by the United States of any

lands which might fall within section sixteen. Whether,. therefore, the Federal Government had, or had not, the power thus to dispose of these lands before survey, is a question we are not called upon to decide. Keeping in view the act of June 23d, 1836, and the policy of the Government in reference to this question, which has been steadily adhered to from the first, we should be strongly inclined to construe the act of March 1, 1847, as not intended to include section sixteen, had no express exception of that section been made. But the second section of the act contains an express exception and reservation of section sixteen from the sales authorized by the act: and we think this exception extends as well to the mineral, as to the non-mineral lands of the district; in other words, to all the sales authorized by the act, whether by pre-emption or otherwise. In reference to this point, and all others bearing upon the construction of this act, we fully concur in the opinion expressed by the Supreme Court of the United States in the case of *Cooper v. Roberts*, 18 *How.* 173, where the construction of this act was brought under decision with reference to the same land here in controversy; to which opinion we refer for the grounds of the conclusion at which we have arrived. Though the parties in this case are different, yet they respectively represent the same rights; the Minnesota Company in this case representing Roberts in that case, and the National representing Cooper. And though the judgment in that case may not be strictly a bar to this, under our statute: yet the opinion of that Court, to which the ultimate decision of this question would properly belong, would justly be entitled to great weight though we might not be satisfied with the grounds upon which it was based; but their construction of that act is the same which we should have felt bound to adopt without its aid.

This disposes of the whole case, so far as the plaintiffs. rely upon a title under the patent from the United States.

With the defendants' title in an action of ejectment (which constitutes so large a portion of the evidence and of the finding of the Court in the present case), we have nothing to do, except when, and so far as it may tend to defeat that of the plaintiff. It could have no such tendency here, as the respective titles claimed are derived from separate and independent sources. If the plaintiffs' title from the United States were good, that set up by the defendants could not affect it: being void, it needed no title in the defendants to defeat it. The defendants' case would have been equally strong had they shown no conveyance by the State.

The State, however, had . conveyed the whole of this section sixteen to Williams, and Williams and wife had conveyed to the plaintiffs two separate parcels of the land conveyed by the plaintiffs' patent from the United States, one in the southeast corner of the section, containing twenty-two acres (upon which no question is raised), and the other in the northeast corner, the latter being described in the deed as ninety rods long from north to south, and forty rods wide from east to west, "reserving, however, on the last described tract, the right to all mines or minerals now discovered, or that may hereafter be discovered thereon, and the right of working the same: provided that such mining operations shall not incommode the working of the present steam engine, stamp mill and saw mill of the Minnesota Mining Company on said tract, nor obstruct the stream of water on which said stamp and saw-mill are situated, to the detriment of the Minnesota Mining Company."

Williams and wife afterwards conveyed the whole section to Cooper (under whom defendants claim) excepting the tract thus previously conveyed to the Minnesota Company, by the same description as contained in the deed to them, and conveying also the reservation of the mines in the lands thus excepted.

It was claimed by the defendants on the trial, that the description of the tracts contained in the deed from Williams and wife to the Minnesota Company (in the northeast corner), and of the exception in the deed from Williams and wife to Cooper, was erroneous — that it was intended to be a tract ninety rods long from east to west (instead of north and south), and forty rods wide from north to south (instead of east and west). And, apparently for the purpose of preventing a recovery by the plaintiffs under their deed of a portion not intended to be conveyed by it, and which was claimed by defendants — for we can discover no other purpose — the defendants were allowed, under objection from the plaintiffs, to introduce parol evidence to correct the erroneous description, by showing that the objects and improvements referred to in the deed would not be included, if located as described in the deed (making the length of the tract north and south), but would be included and the deed made consistent, by locating the tract with its length east and west, and its width north and south. To this exception was taken by the plaintiffs. But we are not called upon to express an opinion upon the point; as by reference to the declaration it will appear that the plaintiffs except (from the east half of the northeast quarter of the section claimed by them) a tract in the northeast corner of the section forty rods wide from north to south, and eighty rods long from east to west (the remaining ten rods would extend beyond the lot covered by their patent) : thus fully recognizing the description as claimed and sought to be proved by the defendants; or, at least, showing that they did not claim to recover any lands covered by that part of the description which was claimed to be erroneous. No such proof on the part of the defendants was therefore necessary, and no such question was involved in the issue. But no injury could result to the plaintiffs from this evidence, and they can not assign it as error.

THE MINNESOTA MINING CO. *v.* THE NATIONAL MINING CO.

The judgment of the District Court of the Upper Peninsula for the county of Ontonagon, must be affirmed, with costs.

MARTIN CH. J. and MANNING J. concurred.

CAMPBELL J. did not sit in this case.