UNITED STATES v. CHICAGO, M. & ST. P. RY. CO. et al

(Circuit Court, D. Minnesota. Second Division. August 14, 1909.)

1. COURTS (§ 367*) — FEDERAL COURTS — AUTHORITY OF STATE STATUTES — LIS PENDENS.

Rev. Laws Minn. 1905, § 4389, providing that the pendency of an action relating to real estate is notice to purchasers or incumbrancers only from the time of the filing of notice thereof in the office of the register of deeds

---

of the county in which the land is situated, is a rule of property of the state relating to real estate, and applies to a suit in equity pending in a federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. PUBLIC LANDS (§ 120*)—PATENTS—BONA FIDE PURCHASER.

In a suit in equity by the United States to cancel a patent to lands, the rule as to what constitutes a bona fide purchaser is no different from what it would be if the complainant were an individual.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*

Bona Fide Purchasers, see note to United States v. Detroit Timber & Lumber Co., 67 C. C. A. 13.]

In Equity.

C. C. Houpt, U. S. D. Atty., and Paul A. Ewart, Asst. U. S. Atty. W. H. Norris, for defendant railroad companies. Durment & Moore, for other defendants.

WILLARD, District Judge. This is a bill in equity filed by the United States under authority of Act Cong. March 3, 1887, c. 376, 24 Stat. 556 (U. S. Comp. St. 1901, p. 1595), providing for the adjustment of land grant made by Congress to aid in the construction of railroads, and for a forfeiture of unearned lands, etc.

The grant in question in this case is contained in the act of Congress passed on the 4th day of July, 1866 (chapter 168, 14 Stat. 87); it being the same grant which was before the Supreme Court in the case of the United States v. Chicago, Milwaukee & St. Paul Railway Company, 195 U. S. 524, 25 Sup. Ct. 113, 49 L. Ed. 306. At the trial the government conceded that as to all the lands described in the bill of complaint, except 160 acres, the suit was barred by the limitation of five years contained in Act Cong. March 2, 1896, c. 39, 29 Stat. 42 (U. S. Comp. St. 1901, p. 1603). The defendant Evans claims to be the owner of the S. W. ¼ of the S. W. ¼ of section 21, township 104, range 26, being a part of the 160 acres as to which the government did not admit that the suit was barred by the statute of limitations; and, as to this tract, he claims to be a bona fide purchaser within the provisions of the acts of Congress above cited, 24 Stat. 556, and 29 Stat. 42. The Supreme Court in the case of the U. S. v. Winona & St. Peter R. R. Co., 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789, and in the case of the U. S. v. C. M. & St. P. Ry. Co., 195 U. S., 524, 25 Sup. Ct. 113, 49 L. Ed. 306, has defined the meaning of the phrase "bona fide purchaser" as it occurs in these acts. The brief of the government contains a statement of the facts relating to the Evans purchase from the railway company as such facts appear from the evidence, and from that statement it clearly appears that Evans is within the decisions above cited a bona fide purchaser of the tract claimed by him, and the bill therefore as to him cannot be maintained.

Another tract included in the said 160 acres, as to which the government did not admit the bar of the statute of limitations, is the N. E. ¼

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the S. E. ¼ of section 31, township 104, range 25. On the 1st day of May, 1886, the railway company conveyed this tract by warranty deed to Jacob Klenk, and on the 12th day of July, 1904, Jacob Klenk conveyed the same property to the defendant Frederick Klenk, who on the 10th day of January, 1905, mortgaged it to the defendant the Northwestern Mutual Life Insurance Company. The facts resulting from the evidence, as the same are stated in the brief of the government, show that also with regard to this tract Jacob Klenk was a bona fide purchaser thereof within the decisions above referred to. The bill therefore cannot be maintained either against Frederick Klenk or against the Northwestern Mutual Life Insurance Company.

Of the 160 acres above referred to there remains the S. ½ of the N. E. ¼ of section 31, township 104, range 25. One Gillson made a homestead entry of this land on the 16th of January, 1872. He was in possession thereof, claiming adversely to the railway company until 1880, and he exercised control over the same until 1886 or 1887. During this time the defendant Jacob Klenk rented this land from Gillson, and occupied the same as his tenant for three years. Before Klenk bought the land from the railway company, he told Gillson that he was going to make such a purchase, and Gillson then stated to him that he, Gillson, claimed to own the land. Upon this evidence there can be no doubt that the defendant Klenk was not a purchaser in good faith, and without notice of defects in the title of the railroad company. This action was commenced in February, 1901. Jacob Klenk was at that time made a defendant herein, but his son Jacob C. Klenk was not made a party to the suit until the 7th day of March, 1905. Prior to that time, and in July, 1904, the defendant Jacob C. Klenk bought the land from his father Jacob Klenk, who by warranty deed conveyed the same to him in that month. This deed was duly recorded in the proper office on the 13th of July, 1904. The evidence shows that Jacob C. Klenk had no notice or knowledge of any defects in his father's title, and, under such evidence, was a bona fide purchaser within the decisions above referred to, unless the pendency of this suit at the time he bought in 1904 charged him with notice of such defects. The claim of the government is that he acquired his right over three years subsequent to the date of the filing of the original bill of complaint, that he was a purchaser pendente lite, and took his title subject to the result of the pending suit. The claim of the defendant Jacob C. Klenk upon this point is that by the laws of Minnesota then in force (section 4389, Rev. Laws Minn. 1905) the pendency of an action was notice to purchasers or incumbrancers only from the time of the filing of the notice thereof in the office of the register of deeds of the county where the land was situated. In the case of Romeu v. Todd, 206 U. S. 358, page 362, 27 Sup. Ct. 724, page 725, 51 L. Ed. 1093, there was presented a similar question to the one presented in this case. By the Spanish law in force in Porto Rico the pendency of an action was notice to subsequent purchasers only from the time of the filing of the notice of such pendency in the proper register's office. The United States court for Porto Rico held:

"As this is a proceeding on the equity side of the court, it is governed by the principles of equity followed by the federal courts as distinguished from

172 F.—18

suits at law where local statutes are adopted. As local laws have no binding force upon the United States courts in matters of procedure in equity and maritime law, the laws of Porto Rico relating to the filing of notice of lis pendens have therefore no application in this case, and the sufficiency of this bill must be determined by the rules and principles followed in like proceedings in the courts of the United States."

That court held that the pendency of an equity cause in the courts of the United States affecting real property constituted constructive notice as to third parties, any rule of a state law notwithstanding. That case was taken to the Supreme Court of the United States, but the question decided in the lower court was not passed upon by the appellate court. That court held that the laws in force in Porto Rico had been by the Foraker Act (Act April 12, 1900, c. 191, 31 Stat. 77) adopted as the laws of the United States, and that, therefore, a court of the United States sitting in that island, created by an act of Congress, had no authority to disregard a local law which Congress by express legislation directed to be continued in force. In reaching that conclusion the court assumed, for the sake of the argument:

"That an innocent third party would be affected by the constructive notice resulting from the pendency of an equity cause in a Circuit Court of the United States sitting within a state, * * * although there had been no compliance with a statutory rule of property prevailing in such state requiring the recording of a notice of the pendency of suits affecting real property, in order to make the same operative against innocent third parties."

Whether or not that assumption is correct is the question to be decided in this case. It does not fall within the provisions of section 914 of the Revised Statutes (U. S. Comp. St. 1901, p. 684), which declares that:

"The practice, pleadings, and forms and modes of proceedings in civil cases other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding."

The case falls rather within the rule, speaking generally, which requires a Circuit Court sitting within a state to enforce the laws of that state, so far as they relate to real property. Thus in the case of Hinde v. Vattier, 5 Pet. 398, p. 401, 8 L. Ed. 168, the court said:

"There is no principle better established, and more uniformly adhered to in this court, than that the Circuit Courts, in deciding on titles to real property in the different states, are bound to decide precisely as the state court ought to do. Wilkinson v. Leland, 2 Pet. 656, 7 L. Ed. 542. The rules of property and of evidence, whether derived from the laws or adjudications of the judicial tribunals of a state, furnish the guides and rules of decision in those of the Union, in all cases to which they apply, where the Constitution, treaties, or statutes of the United States do not otherwise provide."

In Olcott v. Bynum, 17 Wall. 44, the court said on page 57 (21 L. Ed. 570):

"It was held by the court below that this evidence was incompetent to establish the existence of the lost deed, and that the complainant had therefore failed to show any connection with the property in question. Upon the ground of this objection the bill was dismissed. Whether this ruling was correct is an inquiry which meets us at the threshold of our examination of

the case. It is one to be determined by the lex loci rei sitæ. It is to be considered solely in the light of the statutes and adjudications of North Carolina. This court must hold and administer the law upon the subject as if it were sitting as a local court of that state."

It is the duty of the federal court to apply the rules of the local courts, whether the proceeding before it is an action at law or a bill in equity. In the case of Brine v. Insurance Co., 96 U. S. 627, 24 L. Ed. 858, the court said on page 633, speaking of a statute of Illinois which gave a mortgagor a right to redeem from foreclosure sale:

"It is denied that these statutes are of any force in cases where the decree of foreclosure is rendered in a court of the United States, on the ground that the equity practice of these courts is governed solely by the precedents of the English Chancery Court as they existed prior to the declaration of independence, and by such rules of practice as have been established by the Supreme Court of the United States, or adopted by the circuit court for their own guidance." * * * "On the other hand, it is said that the effect of the sale and conveyance made by the commissioner is to transfer the title of real estate from one person to another, and that all the means by which the title to real property is transferred, whether by deed, by will, or by judicial proceedings are subject to, and may be governed by, the legislative will of the state in which it lies, except where the law of the state on that subject impairs the obligation of a contract." * * * "We are of opinion that the propositions last mentioned are sound; and if they are in conflict with the general doctrine of the exemption from state control of the chancery practice of the federal courts, as regards mere modes of procedure, they are of paramount force, and the latter must to that extent give way. It would seem that no argument is necessary to establish the proposition that when substantial rights, resting upon a statute, which is clearly within the legislative power, come in conflict with mere forms and modes of procedure in the courts, the latter must give way and adapt themselves to the forms necessary to give effect to such rights."

It is true that the Minnesota statute above referred to does in a certain manner undertake to determine what effect shall be given to a suit in equity pending in the courts of the United States. But that effect is purely incidental. The act is not limited to proceedings in the United States court, but is general and extends to all actions. Moreover, it would not seem to interfere with the equity practice or procedure any more than did the Illinois statute allowing a redemption from a foreclosure sale, which, as has been said, the Supreme Court held directly applicable to a foreclosure decree rendered in a circuit court of the United States. In fact, the Minnesota statute is not a law relating to procedure, but is rather a law governing the substantive rights of persons dealing with real estate. It is a law to which resort must be had when it is necessary for the courts to determine who is and who is not a bona fide purchaser of real estate. It will be noticed that the Supreme Court in the case of Romeu v. Todd, above cited, used this language, "Although there had been no compliance with the statutory rule of property prevailing in such state," thus indicating that a law similar to the Minnesota law would not be considered as procedure law, but rather as a statutory rule of property.

The government in its brief relies upon the case of King v. Davis, 137 Fed. 222, decided in the Circuit Court for the Western District of Virginia, in which it was held that a Virginia statute similar to the Minnesota statute here in question could not have any effect upon a suit in equity in the United States Circuit Court. But that case seems

to have been decided upon the proposition that, under the Virginia law, clerks in the state court could not be compelled to file notice of lis pendens relating to cases pending in the federal court. There is no difficulty of that kind in connection with the Minnesota law. The section above quoted requires the registers of deeds to record all notices which may be presented to them; and by section 537, Rev. Laws Minn. 1905, a register of deeds is required to keep suitable books, and required at large and in full, word for word, to enter all instruments left with him for record. The fact that the complainant in this case is the United States cannot affect the result. In the case of United States v. Detroit Timber & Lumber Co., 131 Fed. 668, 67 C. C. A. 1, decided in the Circuit Court of Appeals, Eighth Circuit, on July 28, 1904, the court said on page 677 of 131 Fed., on page 10, of 67 C. C. A.:

"Finally, this is a suit in equity. The equitable claims of the United States appeal to the conscience of a chancellor, with the same, but with no greater or less, force than would those of an individual in like circumstances. Bona fide purchasers are the especial favorites of courts of equity."

In the case of United States v. Stinson, 197 U. S. 200, the court said on page 204, 25 Sup. Ct. 426, 49 L. Ed. 724:

"While the government, like an individual, may maintain any appropriate action to set aside its grants and recover property of which it has been defrauded, and while laches or limitation do not of themselves constitute a distinct offense as against it, yet certain propositions in respect to such an action have been fully established. * * *

"Second. The government is subjected to the same rules respecting the burden of proof, the quantity and character of evidence, the presumption of law and fact that attend the prosecution of a like action by an individual. * * *

"Third. It is a good defense to an action to set aside a patent that the title has passed to a bona fide purchaser for value without notice. And, generally speaking, equity will not simply consider the question whether the title has been fraudulently obtained from the government, but also will protect the rights and interests of innocent parties."

In this case the defendant Jacob C. Klenk bought the property in question, and paid $4,000 therefor. He had no actual notice of the pendency of this suit, nor had he any notice or knowledge of any adverse claim to the land, or of any defect in his father's title thereto. No notice of lis pendens as required by the Minnesota law was filed until the 18th of February, 1905, after the purchase by Jacob C. Klenk; nor was he made a party to this suit until the 7th day of March, 1905. At that time the suit was barred as to him by the period of limitations contained in the act of 1896, and, although he bought during the pendency of the action, he is not bound by the result therein as to his grantor Jacob Klenk, because no notice of the pendency of the action was recorded in the proper register's office, as required by the Minnesota law, prior to his purchase.

The government conceded at the trial that the value of the land could not be recovered from the railroad company.

Let a decree be entered dismissing the bill as to all the defendants therein.