## SWEET v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   September 27, 1915.)

No. 4298.

*(Syllabus by the Court.)*

**1.** PUBLIC LANDS ⬳52—ENABLING ACT—SCHOOL LANDS.

The Enabling Act of Utah grants the lands valuable for minerals, as well as all other lands in sections 2, 16, 32, and 36 in each township, not expressly excepted from the grant in section 6 thereof.   Act July 16, 1894, c. 138, 28 Stat. 107, 109.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 139–142, 146, 147;  Dec. Dig. ⬳52.]

**2.** STATUTES ⬳190—CONSTRUCTION.

Where the terms of a statute are clear and their meaning certain, construction has no place or office.   The legal presumption is that the legislative body meant what it said, and it is the duty of the courts not to amend or revoke, but to give effect to, the enactment.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 269;  Dec. Dig. ⬳190.]

**3.** STATUTES ⬳212—CONSTRUCTION—EXCEPTIONS.

Where a legislative body makes a plain grant or provision, and makes no exception to it, the legal presumption is that it intended to make none, and it is not the province of the courts to do so.   A fortiori, where a legislative body has made a clear grant or provision, and has itself carefully considered and expressly stated in its act the exceptions, the courts may not strike down the exceptions it has made, or add others which the enacting body excluded.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 289;  Dec. Dig. ⬳212.]

**4.** STATUTES ⬳176—CONSTRUCTION—PUBLIC POLICY.

When the law-making power speaks in no uncertain terms upon a particular subject over which it has constitutional power to legislate, public policy in that particular case is what the statute enacts, and the statute may not be repealed or amended by the courts, on the ground that it is contrary to public policy, because the same legislative body has treated other particular subjects or cases in a different manner.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 255;  Dec. Dig. ⬳176.]

**5.** PUBLIC LANDS ⬳52—GRANT—SCHOOL LANDS—UTAH.

The grant of lands to Utah for school purposes was not a sale, and neither section 2318, Revised Statutes (Comp. St. 1913, § 4613), nor Act May 10, 1872, c. 152, 17 Stat. 91, reserving mineral lands from sale is applicable thereto.   Neither of them disqualified the Congress subsequently to grant public lands valuable for minerals for school or other public purposes, or modified or restricted the effect of such an absolute grant.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 139–142, 146, 147;  Dec. Dig. ⬳52.]

**6.** STATUTES ⬳225½—CONSTRUCTION—GENERAL AND SPECIAL LAWS.

Where general laws treating of many subjects and a law treating of one of those subjects, or one particular case, are inconsistent, they must, if possible, stand and be given effect together, the former as the general law, and the latter as the law of the particular case or subject.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 305;  Dec. Dig. ⬳225½.]

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. UNITED STATES ⊚➡126—ACTIONS—RIGHTS OF UNITED STATES—COURTS.
  The equities of the United States appeal to the conscience of a chancellor with no greater or less force than would the equities of a private individual in like circumstances.

  [Ed. Note.—For other cases, see United States, Cent. Dig. § 115; Dec. Dig. ⊚➡126.]

Appeal from the District Court of the United States for the District of Utah; John A. Marshall, Judge.

Suit by the United States against Arthur A. Sweet, who died before decree. From a decree for plaintiff, Frederick A. Sweet, as administrator, appeals. Reversed and remanded, with directions.

A. C. Ellis, Jr., and Russell G. Schulder, both of Salt Lake City, Utah (W. H. Dickson, of Salt Lake City, Utah, and A. R. Barnes, Atty. Gen., of Utah, on the brief), for appellant.

William W. Ray, U. S. Atty., of Salt Lake City, Utah (David S. Cook, Asst. U. S. Atty., of Salt Lake City, Utah, on the brief), for the United States.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge. [1] By the terms of the Enabling Act of the state of Utah the United States granted sections 2, 16, 32, and 36 in every township in that state to the state for the support of common schools. The act contained no exception or reservation of mineral lands from this grant. 28 Stat. 107, approved July 16, 1894. In the year 1904 the state of Utah contracted to sell section 32 in township 15 south, range 8 east of Salt Lake meridian, to George T. Badger, who assigned his contract to Arthur A. Sweet in 1906. Sweet paid the state for the land and was demanding his deed when in 1907 the United States brought this suit against him to quiet the title in itself, on the ground that the section was well-known coal land when the state was admitted into the Union, and for that reason never passed to the state. The court below sustained the claim of the government and the administrator of the estate of Arthur A. Sweet, who had died meanwhile, appealed. He complains that the evidence established the fact that the land in question was not well-known coal lands, and that, if it was, it was granted to the state by the Enabling Act. Sections 6, 10, and 20 of that act contain the grant, and all the exceptions to and reservations from the grant, and they read in this way:

"Sec. 6. That upon the admission of said state into the Union, sections numbered two, sixteen, thirty-two, and thirty-six in every township of said proposed state, and where such sections or any parts thereof have been sold or otherwise disposed of by or under the authority of any act of Congress other lands equivalent thereto, in legal subdivisions of not less than one quarter section and as contiguous as may be to the section in lieu of which the same is taken, are hereby granted to said state for the support of common schools, such indemnity lands to be selected within said state in such manner as the Legislature may provide, with the approval of the Secretary of the Interior: Provided, that the second, sixteenth, thirty-second, and thirty-sixth sections embraced in permanent reservations for national purposes shall not, at any time, be subject to the grants nor to the indemnity provisions of this act, nor shall any lands embraced in Indian, military, or other reservations of any character be subject to the grants or to the indemnity provisions of

SWEET V. UNITED STATES

this act until the reservation shall have been extinguished and such lands be restored to and become a part of the public domain."

"Sec. 10. That the proceeds of lands herein granted for educational purposes, except as hereinafter otherwise provided, shall constitute a permanent school fund, the interest of which only shall be expended for the support of said schools, and such land shall not be subject to pre-emption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be surveyed for school purposes only."

"Sec. 20. That all acts or parts of acts in conflict with the provisions of this act, whether passed by the Legislature of said territory or by Congress, are hereby repealed."

[2] The United States now asks the courts to amend section 6 by adding thereto the words "nor shall any mineral lands be subject to the grant or the indemnity provisions of this section," and thereby to revoke the grant of the mineral lands in sections 2, 16, 32, and 36 clearly made by the terms of the section. But such an amendment and revocation would be violative of settled canons of construction and established principles of law. The Enabling Act is clear, free from even the shadow of an ambiguity. And when a statute is plain and its meaning is certain, construction has no place or office. The conclusive legal presumption is that the legislative body meant what it said, and the duty of the courts is to give effect to its acts, not to amend or repeal them. Brun v. Mann, 151 Fed. 145, 157, 80 C. C. A. 513, 525, 12 L. R. A. (N. S.) 154; United States v. Ninty-Nine Diamonds, 139 Fed. 961, 964, 72 C. C. A. 9, 12, 2 L. R. A. (N. S.) 185; Johnson v. Southern Pac. Co., 117 Fed. 462, 465, 54 C. C. A. 508, 511; Swarts v. Siegel, 117 Fed. 13, 18, 19, 54 C. C. A. 399, 404, 405; St. Paul, M. & M. Ry. Co. v. Sage, 71 Fed. 40, 47, 17 C. C. A. 558, 565; Webber v. St. Paul City Ry. Co., 97 Fed. 140, 144, 38 C. C. A. 79, 83; Grainger & Co. v. Riley, 201 Fed. 901, 904, 120 C. C. A. 415, 418; United States v. Alamorgordo Lumber Co., 202 Fed. 700, 706, 121 C. C. A. 162, 168; First Nat. Bank v. United States, 206 Fed. 374, 377, 378, 124 C. C. A. 256, 259, 260, 46 L. R. A. (N. S.)1139; Soliss v. General Electric Co., 213 Fed. 204, 207, 129 C. C. A. 548, 551.

[3] Congress had the power to make or to withhold this grant in whole or in part. It had absolute power to reserve or except from the grant a part of or all the mineral lands in the state. Its attention was unavoidably called to the exceptions to the grant it would make, for it expressly provided in section 6 that lands in permanent reservations for national purposes should be forever excepted from the grant, and that lands in Indian, military, or other reservations should be excepted until the reservation was extinguished. Nevertheless it did not except or reserve mineral lands from the grant. And where a legislative body makes a plain grant or provision, and makes no exception to it, the legal presumption is that it intended to make none, and it is not the province of the courts to do so. A fortiori, is it true that, where a legislative body has made a grant or provision, and has itself carefully considered and specified the exceptions to it, the courts may not lawfully strike out the exceptions made, or add others which the enacting body excluded. Such a proceeding would pass the bounds of construction and would constitute reprehensible judicial legislation. Hobbs v. McLean, 117 U. S. 567, 579, 6 Sup. Ct. 870, 29 L. Ed. 940; Maxwell v.

Moore, 22 How. 185, 191, 16 L. Ed. 251; Sutherland on Statutory Construction, § 328; Cella Commission Co. v. Bohlinger, 147 Fed. 419, 425, 78 C. C. A. 467, 473, 8 L. R. A. (N. S.) 537; Omaha Water Co. v. City of Omaha, 147 Fed. 1, 13, 77 C. C. A. 267, 279, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614; Chicago, M. & St. Paul Ry. Co. v. Westby, 178 Fed. 619, 631, 102 C. C. A. 65, 77, 47 L. R. A. (N. S.) 97; American Grain Separator Co. v. Twin City Separator Co., 202 Fed. 202, 205, 120 C. C. A. 644, 647; United States v. Alamogordo Lumber Co., 202 Fed. 700, 706, 121 C. C. A. 162, 168; United States v. Mo. Pac. Ry. Co., 213 Fed. 169, 173, 130 C. C. A. 5, 9.

[4, 5] Counsel for the United States seek to escape from the conclusion which the rules and principles to which reference has been made seem to compel, on the grounds that it is the settled public policy of the government to reserve mineral lands from sales and grants; that section 2318 of the Revised Statutes (Comp. St. 1913, § 4613) provided that "in all cases lands valuable for minerals shall be reserved from sale, except as otherwise expressly directed by law"; that Act May 10, 1872, 17 Stat. 91, c. 152, § 1 (Comp. St. 1913, § 4614), declared that all valuable mineral deposits in lands belonging to the United States should be "free and open to exploration and purchase, and the lands in which they are found to occupation and purchase"; that the Supreme Court held in Mining Co. v. Consol. Mining Co.; 102 U. S. 167, 26 L. Ed. 126, that the mineral lands in California were excepted from the grant to that state by Act March 3, 1853, 10 Stat. pp. 244, 246, c. 145, of sections 16 and 36 in each township for public schools; and that in Deffeback v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423, that court held that the title of a claimant of a placer mine was superior to the claimant of a townsite in view of the provisions of Act May 10, 1872, section 2318, Rev. Stat., and the townsite laws, which expressly except mineral lands. Sections 2392, 2386, Rev. Statutes (Comp. St. 1913, §§ 4798, 4790).

There are many reasons why the contention that the courts should amend section 6 and revoke a part of the grant it so clearly makes, on the ground that the settled public policy of the United States is to except mineral lands from its grants, ought not to prevail. In the first place, Congress has declared in the Enabling Act itself in plain and positive terms that the public policy of the nation was to grant to the state of Utah section 2, 16, 32, and 36 in each township in that state, without any exception or reservation from that grant of mineral lands, for the support of common schools, and as the Supreme Court said in United States v. Trans-Missouri Freight Association, 166 U. S. 290, 340, 17 Sup. Ct. 540, 559, 41 L. Ed. 1007:

"The public policy of the government is to be found in its statutes, and when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials; but when the law-making power speaks upon a particular subject over which it has constitutional power to legislate, public policy in such a case is what the statute enacts." Dewey v. United States, 178 U. S. 510, 521, 20 Sup. Ct. 981, 44 L. Ed. 1170.

The Supreme Court has twice considered the very question here at issue, the question whether or not under a like grant of school lands to Michigan without an exception of mineral lands the courts could

lawfully enact that exception on the ground that such was the settled public policy of the nation, and has twice decided, after exhaustive arguments, that they could not lawfully do so. Cooper v. Roberts, 18 How. 173, 177, 178, 15 L. Ed. 338; Roberts v. Cooper, 20 How. 467, 484, 485, 15 L. Ed. 969; Minnesota Min. Co. v. National Min. Co., 11 Mich. 186; Id., 3 Wall. 332, 18 L. Ed. 42.

Moreover, while it has been the general practice of the United States to reserve mineral lands from homesteads, pre-emptions, sales, and grants to railroad companies, an examination of the grants of lands to states for school purposes demonstrates the fact that it has been the practice of Congress to determine and declare by legislative act, in each case, and not by any settled public policy, whether or not mineral lands shall be reserved from the grant. They were not reserved from the grant to Michigan. The grant to Utah is in substantially the same terms. They are not reserved from the grants of school sections to Wisconsin, Minnesota, Missouri, or Kansas, and the acts of February 18, 1873 (17 Stat. 465, c. 159 [Comp. St. 1913, § 4653]), and May 5, 1876, 19 Stat. 52, c. 91 [Comp. St. 1913, § 4654]), expressly provide that the public lands in those states are excepted from the provisions of the act of May 10, 1872 (17 Stat. 91), and of section 2318, Revised Statutes. The Enabling Act of Colorado (Act March 3, 1875, c. 139, 18 Stat. 474) expressly provides that all mineral lands shall be excepted from the operation of its grants. The Enabling Act of the state of Washington (Act Feb. 22, 1889, c. 180, 25 Stat. 676), grants the sixteenth and thirty-sixth sections in each township for school purposes, and then provides that, if either of these sections shall be found to be mineral lands, they shall not pass to the state, but other lands in lieu of them may be selected, and the same provision is found in the Enabling Acts of Idaho, Montana, North Dakota, South Dakota, and Wyoming. On the other hand, the Enabling Acts of Florida (Act May 17, 1856, c. 31, 11 Stat. 15), and of Oklahoma (Act June 16, 1906, c. 3335, 34 Stat. 273), grant the school lands without any reservation of the mineral lands and the latter act contains convincing evidence, in addition to the grant itself, that Congress intended to grant the mineral lands in the school sections, for it expressly provides that where the lands granted for school purposes are valuable for minerals the state shall not sell them prior to January 1, 1915, but that it may lease them and apply the proceeds to school purposes.

Thus it appears that mineral lands are not excepted from the congressional grants of school lands to Michigan, Minnesota, Wisconsin, Missouri, Kansas, Florida, and Oklahoma, that they are excepted by express provisions to that effect in the Enabling Acts which grant school sections to Washington, Idaho, Montana, North Dakota, South Dakota, and Wyoming, and that in the latter acts provision is made for the selection of indemnity lands. The grant of school lands to Utah is in substantially the same terms as the grant to Michigan, it contains no exception of mineral lands and no provision for indemnity lands in lieu of them, and the conclusion is unavoidable that the acts of Congress disclose no such settled public policy to except mineral lands from grants of school lands as would sustain the courts in amend-

ing a grant without such an exception by inserting it; but they demon- strate the fact that Congress has exercised its constitutional power to make grants with and without such an exception as its good judg- ment dictated, and they impose the duty on the courts not to amend or revoke them by construction, but to enforce them according to their plain terms and certain meaning.

Section 2318, Revised Statutes (U. S. Comp. Stat. 1901, p. 1423), invoked by counsel for the government, descended from a provision in section 5 of "An act concerning certain lands granted to the state of Nevada," approved July 4, 1866 (14 Stat. 86, c. 166). That act con- firmed certain grants to the state of Nevada and made others. Sec- tion 5 related to surveys, and provided that in surveying the lands in Nevada the lines of the surveys might so vary that the forms of the tracts would be other than rectangular, and added:

"But in all cases lands valuable for mines of gold, silver, quicksilver or copper, shall be reserved from sale."

The form in which this provision now appears in the Revised Stat- utes is:

"In all cases lands valuable for minerals shall be reserved from sale except as otherwise expressly directed by law." Section 2318, Rev. Stat.

But this provision merely reserves from sale by the United States lands valuable for minerals. It does not prohibit the United States or its Congress from giving or granting such lands for educational or other public purposes, nor does it in any way restrict or limit its legis- lative power so to do. The grant here in question is not a sale, and section 2318 is inapplicable thereto.

For the same reasons the provision of the Act of May 10, 1872 (17 Stat. 91, c. 152, § 1), which declares that all valuable mineral deposits in lands belonging to the United States, both surveyed and unsur- veyed, shall be "free and open to exploration and purchase and the lands in which they are found to occupation and purchase," and the various statutes under which lands of the United States valuable for coal and other minerals may be acquired by miners fail to restrict or limit the power of Congress to make this grant, or to modify its plain meaning and effect. They are parts of the general laws of the United States relative to the sale and disposition of its public lands by the officers of its Land Department, and they in no way disqualify the Con- gress itself that made them from disposing of those lands by subse- quent grants at any time before the rights of private parties have at- tached to them under the general laws. Moreover, if this view were incorrect, and if there were in any of the acts of Congress to which reference has been made, or in any other of its acts, a restriction or prohibition of the grant of the mineral lands in these school sections, the Congress which made such restriction or prohibition could repeal it in whole or in part, and it has clearly done so to the extent neces- sary to validate the grant of the mineral lands in the Utah school sec- tions.

[6] In the first place, it has made by section 6 of the Enabling Act, a clear and certain grant of the four sections in each township, without exception or reservation of mineral lands, an enactment sufficient in

itself to relieve from any previous prohibition or restriction in the general laws, under the familiar rule that where general laws applicable to many subjects, and a special law treating one of those subjects, are inconsistent, they must be read together, and effect must be given, if possible, to both, to the former as the general law of the land, and to the latter as the law of its particular subject. Board of Com'rs v. Ætna Life Ins. Co., 90 Fed. 222, 227, 32 C. C. A. 585, 590; King v. Pomeroy, 121 Fed. 287, 294, 58 C. C. A. 209, 216; Christie-Street Com. Co. v. United States, 136 Fed. 326, 333, 69 C. C. A. 464, 471; Hemmer v. United States, 204 Fed. 898, 906, 907, 123 C. C. A. 194, 202, 203; Priddy v. Thompson, 204 Fed. 955, 959, 123 C. C. A. 277, 281; Gowen v. Harley, 56 Fed. 973, 978, 979, 6 C. C. A. 190, 195, 196; State v. Stoll, 17 Wall. 425, 436, 21 L. Ed. 650.

In the second place, the Congress by section 10 of this Enabling Act has provided that:

The "proceeds of lands herein granted for educational purposes, except as hereinafter provided, shall constitute a permanent school fund, * * * and such lands shall not be subject to pre-emption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be surveyed for school purposes only."

If the mineral lands in these sections were open to entry or acquisition under the coal land laws, or under any other laws of the United States, before this enabling act was passed, here is an express exemption of them from those laws, and a devotion of them to the school purposes of the state of Utah. If under section 2318 they were expressly reserved from grant as well as from sale, "except as otherwise expressly directed by law," here is an express direction by law that they shall be disposed of by grant to the state of Utah for the support of its common schools.

And, finally, to make assurance doubly sure, the Congress provided in section 20 of the Enabling Act that:

"All acts or parts of acts in conflict with the provisions of this act, whether passed by the Legislature of said territory or by Congress, are hereby repealed."

If there were any previous acts of Congress in conflict with the grant of the four sections in each township in Utah, and all the land therein, whether valuable for mineral or not, they were, so far as they related to those sections, unavoidably repealed by this provision of the Enabling Act of Utah. And this review of the general and special legislation on this subject but serves to strengthen and confirm the conclusion that Congress intended to grant and did grant to the state of Utah by its Enabling Act all the lands valuable for minerals, as well as all the other lands, in sections 2, 16, 32, and 36 in each township in that state, except those expressly reserved by section 6.

[7] It is contended that the decisions of the Supreme Court in Mining Co. v. Consolidated Min. Co., 102 U. S. 167, 26 L. Ed. 126, and Deffeback v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423, sustain the view that the courts should amend the Enabling Act of Utah by revoking its grant of the mineral lands in the school sections and adding to section 6 an exception of those lands from the grant. Let

us see. It is a familiar rule of construction that every decision of a court should be considered and given effect in the light of the facts which conditioned it. In the case in hand the United States had granted to the state of Utah by plain unequivocal words, without any exception of mineral lands, the four school sections in each township in 1894. Twelve years later the state contracted to sell this land to Mr. Badger. In reliance upon this plain grant and the state's contract with Badger, Mr. Sweet, the original defendant, purchased that contract, paid the purchase price of section 32, the land here in controversy, $1,920, to the state in 1907, and asked the state for his deed, when, for the first time the United States by this suit in equity sought to revoke its grant of that section and to recover the land. After waiting 12 years, and until the defendant had paid the full price of the land to the state, from which he could not recover it, before commencing its suit to amend its grant, and after waiting 6 years more before submitting its case to the court below, more than 18 years after the grant, the United States appeals to a court of chancery to revoke its plain grant of the mineral lands in this section 32, to impose a loss of $1,920 and interest upon the defendant, and by its judicial decision to except all mineral lands from the plain grant of them. The equities of the United States appeal to the conscience of a chancellor with no greater or less force than those of a private individual under like circumstances. State of Iowa v. Carr, 191 Fed. 257, 266, 112 C. C. A. 477, 486; United States v. Detroit Timber & Lumber Co., 131 Fed. 668, 677, 67 C. C. A. 1, 10; United States v. Chandler-Dunbar Water Power Co., 152 Fed. 25, 26, 27, 37, 38, 40, 41, 81 C. C. A. 221, 222, 223, 233, 234, 236, 237; United States v. Stinson, 125 Fed. 907, 910, 60 C. C. A. 615, 618; State of Michigan v. Jackson, L. & S. R. Co., 69 Fed. 116, 122, 16 C. C. A. 345, 351; United States v. Stinson, 197 U. S. 200, 204, 205, 25 Sup. Ct. 426, 49 L. Ed. 724; United States v. Chicago, M. & St. P. Ry. Co. (C. C.) 172 Fed. 271, 276; United States v. California & Oregon Land Co., 148 U. S. 31, 41, 13 Sup. Ct. 458, 37 L. Ed. 354; Carr v. United States, 98 U. S. 433, 438, 25 L. Ed. 209.

And one who by material misrepresentation, or by silence when he ought to speak out, induces an innocent person to so change his situation that he will suffer substantial loss, if the former takes advantage of the truth which he misrepresented, or of the silence which he ought to have broken, is in equity estopped from so doing. If a private owner of this land had conveyed it to a third person, if that conveyance had become a public record immediately, if the grantee had contracted thereafter to convey it to a fourth person, and another had purchased that contract and paid the purchase price to the third person in reliance upon the conveyance 12 years after it was made, no court of equity would fail to hold that the grantor was thereafter estopped from avoiding that conveyance. And when to these facts are added the fact that the highest court in the land had twice held before Mr. Sweet bought the land in controversy that a grant in like terms conveyed the mineral lands in the school sections (Cooper v. Roberts, 18 How. 173, 177, 178, 15 L. Ed. 338; Roberts v. Cooper, 20 How. 467,

484, 485, 15 L. Ed. 969), all the equities in the case at bar are with the defendant.

What was the case of Mining Company v. Consolidated Mining Co., 102 U. S. 167, 26 L. Ed. 126? The plaintiff in that case sought to recover land in a school section under Act March 3, 1853, 10 Stat. pp. 244, 246, c. 145, from defendants, who were in possession of the land under mining claims which had been instituted in 1851, 1853, and 1863, under the mining laws and customs of Spain and the United States. Some of the defendants' claims had been instituted before the act of 1853 was passed, and there was a town of some 400 inhabitants on the land at that time. In the face of these claims and this possession, the claim of the plaintiff was originated by its predecessor in interest by an application in 1870 to the state of California to purchase the land from it, followed by a conveyance. The claims of the defendant had passed to patent in 1873, under the United States mining laws and customs. In other words, the claims of the defendants were prior in time, rested on the mining laws and customs, were supported by prior mining operations, possession, and occupation. The claims of the plaintiff were subsequent and apparently speculative, and the equities of the case were with the claimants under the mining laws.

The case now in hand and the Michigan case arise on plain grants of school sections in simple Enabling Acts, in special acts for these particular purposes. But the act of March 3, 1853, under which the Mining Company's Case arose, is a general law for the disposition of the public lands in California, and it is full of provisions relating to subjects other than those treated in the Michigan and Utah acts. It is entitled "An act to provide for the survey of the public lands in California, the granting of pre-emption rights and for other purposes." It provides for the appointment of a surveyor general, for land districts and registers and receivers of land offices. Section 3 expressly prohibits the survey of mineral lands into sections, thereby effectually preventing the selection of school sections from mineral lands. Section 6 declares that all the public lands in California "with the exception of sections sixteen and thirty-six, which shall be and hereby are granted to the state for the purposes of public schools in each township," and with the exception of certain other lands and the mineral lands, shall be subject to pre-emption, homestead, etc., and in this quoted exception is the entire grant of the California school lands; section 6 excepts mineral lands from pre-emption; section 7 expressly provides that where any settlement has been made on school sections, or parts of them have been otherwise taken, lands in lieu thereof may be selected, "nor shall any person obtain the benefits of this act by a settlement or location on mineral land"; and the Supreme Court held, among other conclusions, that the settlement and occupation of the lands in the Mining Company Case excepted them from the grant under this section (102 U. S. 176, 26 L. Ed. 126), a fact inapplicable to the case in hand. Section 8 deals with "the public land not mineral lands." Section 12 grants to California 72 sections of land for public buildings, to be selected by the Governor, provided, however, that none of said selections shall be made of mineral lands or lands reserved

for any public purpose, etc.; and section 13 contains a similar grant and proviso.

The Supreme .Court, perceiving the compelling equities of the defendant and of miners in California who had claimed and operated mines under the Spanish and United States customs and laws of mining before and after the passage of the act of 1853, reviewed that act, and influenced, among other things, by the prohibition of the survey into sections of mineral lands found in section 3 (102 U. S. 173, 174, 26 L. Ed. 126), the express reservation of mineral lands from pre-emption in section 6, and the express reservations of mineral lands from the grants in sections 12 and 13, held that it was not the intention of Congress by the act of 1853 to grant, and it did not grant, lands valuable for minerals to the state of California for school purposes, and that, even if it did, the lands in controversy were excepted from the grant by the settlement and occupation thereof prior to the time the act was passed. But none of the reservations or exceptions of mineral lands in the act of 1853 which led the Supreme Court to that conclusion, and no like reservations or exceptions, are found in the Utah act, although several grants of lands in addition to the grant of the school sections were made thereby, and a careful consideration of the act of 1853, the facts of the Mining Company's Case, and the exhaustive opinion therein have left no doubt that neither the decision in that case nor the reasons for it are controlling of or applicable to the case in hand. The facts and the grant in this case are not at all analogous to those in the Mining Company's Case. They are not only analogous, but substantially identical, so far as the legal question is concerned, with the Michigan Case, and the opinions in that case and the stronger reasons persuade that the decisions therein should control and that the grant of the school sections to the state of Utah should be held to include the mineral as well as the nonmineral land therein.

The opinion in Deffeback v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423, has been thoughtfully read and considered. But that case presented for decision no question of the power of Congress to grant, or of the effect of its grant of lands for school or other public purposes, and whatever may be found in the opinion sufficiently general in its terms possibly to include that subject appears to have been said without intent to decide any such question in discussing the disposition of the public lands by the executive officers of the government under the general land laws. The question there at issue was whether claims to the land in dispute under the mining laws or claims to it under the townsite laws were superior, and the opinion and decision is neither controlling nor persuasive upon the issues in this case. Still less relevant is. Brigham City v. Rich, 34 Utah, 130, 97 Pac. 220.

The opinion of Secretary Bliss in State of Utah v. Allen, 27 Land Dec. Dept. Int. 53, 55, to the effect that mineral lands were excepted from the grant of the school sections to Utah, and his opinion in Florida Central & Peninsular Railroad Co., 26 Land Dec. Dept. Int. 600, 601, that such lands were excepted from the grant of May 17, 1856, to Florida (11 Stat. 15), have not escaped consideration, but the reasons which have already been stated, perhaps at too much length,

have convinced that, so far as the grant to Utah is concerned, he and the court below were in error in their conclusion, and that Congress by the Enabling Act of Utah intended to grant, and did grant, the lands valuable for mineral in the school sections named as clearly and effectually as it granted any land whatever therein. This conclusion renders the consideration of the question whether or not the lands in controversy were known to be valuable for mineral immaterial, and it is useless to discuss it.

Let the decree below be reversed, therefore, and let the case be remanded to the court below, with instructions to render a decree for the defendant below.