# LYKINS *v.* McGRATH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DIS-
TRICT OF KANSAS.

No. 90. Argued and submitted January 13, 1902.—Decided February 24, 1902.

It having been settled by *Lomax* v. *Pickering*, 173 U. S. 26, that when the
consent of the Secretary of the Interior is necessary to give effect to a
deed of public land, that approval may be retroactive, and take effect by
way of relation as of the date of the deed, and it appearing from the
fact of the approval by the Secretary in this case that the Indian gran-
tor received full payment for his land, and was in no manner imposed
upon in the conveyance, and as the plaintiffs have no equitable rights
superior to those of the grantee in that deed: *Held*, that the title con-
veyed by the deed must be upheld.

UNDER and by virtue of the provisions of a treaty between
the United States of America and the Kas-kas-kia, Peoria and
other confederated tribes of Indians, concluded on the 30th day
of May, 1854, proclaimed August 10, 1854, 10 Stat. 1083, and
an act of Congress approved March 3, 1859, 11 Stat. 431, the
southeast quarter of section No. fifteen (15), in township No.
seventeen (17), south of range No. twenty-three (23) east, in the
Territory, now State, of Kansas, and other lands, were on No-
vember 1, 1859, conveyed by the United States of America, by
letters patent to Ma-cha-co-me-yah, or David Lykins, a member
of the said Peoria tribe of Indians, being "Peoria Reserve No.
14." The patent contained the following provision : "That
said tracts shall never be sold or conveyed by the grantee or
his heirs without the consent of the Secretary of the Interior,
for the time being." On June 3, 1864, the patentee, David
Lykins, conveyed the land to one Baptiste Peoria, by deed of
that date, which deed was on March 10, 1865, presented to the
Secretary of the Interior, and by him approved. Intermediate
the making of the deed and the approval of the Secretary of
the Interior, to wit, on August 14, 1864, the patentee died,
leaving the two plaintiffs in error (plaintiffs below) as his sole

heirs. This action in ejectment was commenced by them on March 18, 1899, in the Circuit Court of the United States for the District of Kansas against the defendant, in possession and claiming title under the deed to Baptiste Peoria. A demurrer to an amended petition was sustained, and judgment entered in favor of the defendant, whereupon this writ of error was sued out.

*Mr. William M. Springer* for plaintiffs in error.

*Mr. W. C. Perry, Mr. Daniel B. Holmes* and *Mr. Frank M. Sheridan* submitted on their brief.

MR. JUSTICE BREWER, after making the above statement, delivered the opinion of the court.

It is contended by the plaintiffs that the deed from David Lykins, not having been approved before his death, became thereby an absolute nullity; that title immediately vested in them, free from any claim of the grantee in the deed; that they never asked for the approval of the Secretary of the Interior; never consented that it should be given; never in any way ratified or assented to the deed of their ancestor, and that the Secretary was without any authority after the death of the patentee to approve the latter's deed.

The eleventh section of the act of 1854, superseding in this respect the treaty of 1854, contained a general provision in reference to restricted patents to Indians in Kansas, that the Secretary of the Interior should cause them to be issued "upon such conditions and limitations, and under such guards or restrictions as may be prescribed by said Secretary," and in pursuance of this section the restriction referred to was placed in this patent. That the consent of the Secretary was effective, though given after the execution of the deed, was determined in *Pickering* v. *Lomax*, 145 U. S. 310. In that case the patent to the Indian contained a stipulation, authorized by treaty, that the land should not be conveyed "to any person whatever, without the permission of the President of the United States." A

deed was made by the Indian holder of the title on August 3, 1858, which was approved by the President on January 21, 1871, nearly thirteen years thereafter, and it was held that the approval related back to the time of the execution of the deed, and made it valid as of that date. In other words, the antecedent approval of the President was not a condition of the validity of the deed. It was enough that he approved what had been done. It is true that it does not appear that the Indian grantor had died intermediate the making of the deed and the approval of the President, (and in this respect that case differs from the present,) but the grantee from the Indian had died during such interval, and only by way of relation could the action of the President be considered as making effective an otherwise void deed to a dead man. That case came before this court a second time, *Lomax* v. *Pickering*, 173 U. S. 26, 27, and in the opinion then filed the scope of the prior decision was thus stated : " The case was reversed by this court upon the ground that the approval subsequently given by the President to the conveyance was retroactive, and was equivalent to permission before execution and delivery."

It must, therefore, be considered as settled that the consent of the Secretary of the Interior to a conveyance by one holding under a patent like the present may be given after the execution of the deed, and when given is retroactive in its effect and relates back to the date of the conveyance.

But the applicability of the doctrine of relation is denied on the ground that the interests of new parties, to wit, the plaintiffs, have sprung into being intermediate the execution of the conveyance and the approval of the Secretary. But one of the purposes of the doctrine of relation is to cut off such interests, and to prevent a just and equitable title from being interrupted by claims which have no foundation in equity. The doctrine of relation may be only a legal fiction, but it is resorted to with the view of accomplishing justice. What was the purpose of imposing a restriction upon the Indian's power of conveyance ? Title passed to him by the patent, and but for the restriction he would have had the full power of alienation the same as any holder of a fee simple title. The restriction was placed upon

his alienation in order that he should not be wronged in any sale he might desire to make; that the consideration should be ample; that he should in fact receive it, and that the conveyance should be subject to no unreasonable conditions or qualifications. It was not to prevent a sale and conveyance, but only to guard against imposition therein. When the Secretary approved the conveyance it was a determination that the purposes for which the restriction was imposed had been fully satisfied; that the consideration was ample; that the Indian grantor had received it, and that there were no unreasonable stipulations attending the transaction. All this being accomplished, justice requires that the conveyance should be upheld, and to that end the doctrine of relation attaches the approval to the conveyance and makes it operative as of the date of the latter.

Counsel for plaintiffs in error would liken this deed to a power of attorney—a mere authority to convey, which loses its vitality at the death of the grantor of the power. It seems to us more like a deed fully executed and placed in escrow, to be finally delivered on the performance of a condition. While ordinarily in case of an escrow title passes at the date of the second delivery, yet often, for the prevention of injustice, the deed will relate back to the first delivery so as to pass title at that time. "If the grantor being a feme sole should marry, or whether a feme sole or not should die or be attainted after the first and before the second delivery, and so become incapable of making a deed at the time of second delivery, the deed will be considered as taking effect from the first delivery, in order to accomplish the intent of the grantor, which would otherwise be defeated by the intervening incapacity." *Prutsman* v. *Baker*, 30 Wis. 644, 649; *Vorheis* v. *Kitch*, 8 Phila. 554; *Harkreader* v. *Clayton*, 56 Miss. 383; *Black* v. *Hoyt*, 33 Ohio St. 203.

The plaintiffs have no equities superior to those of the purchaser. They are the heirs of the Indian grantor, and as such may rightfully claim to inherit and be secured in the possession of all that property to which he had at his death the full equitable title; but when, as is shown by the approval of the Secretary, he had received full payment of a stipulated price and that

price was ample, and he had been subjected to no imposition or wrong in making the conveyance, then their claims as heirs cannot be compared in equity with those of the one who had thus bought and paid full value. They certainly do not stand in the attitude of *bona fide* purchasers. "A person who is a mere volunteer, having acquired title by gift, inheritance, or some kindred mode, cannot come within the scope of the term '*bona fide* purchaser.' To enable the grantee to claim protection as a *bona fide* purchaser he must have parted with something possessing an actual value, capable of being estimated in money, or he must on the faith of the purchase have changed, to his detriment, some legal position that he before had occupied." Devlin on Deeds, sec. 813.

As, therefore, it has been settled by *Lomax v. Pickering*, *supra*, that approval by the Secretary may be retroactive and take effect by way of relation as of the date of the deed, and as it appears from the fact of the approval by the Secretary that the Indian grantor received full payment for his land and was in no manner imposed upon in the conveyance, and as these plaintiffs have no equitable rights superior to those of the grantee in that deed, it follows that the title conveyed by it must be upheld. The judgment of the Circuit Court is,

*Affirmed.*