## ALMEDA OIL CO. v. KELLEY.

No. 1475.   Opinion Filed March 11, 1913.

(130 Pac. 931.)

**INDIANS—Indian Lands—Mining Lease—Disaffirmance—Removal of Restrictions.** An allottee of the Cherokee Tribe of Indians prior to the removal of his restrictions executed a mining lease upon his allotment subject to the approval of the Secretary of the Interior. After the lease had been submitted and while pending before the Secretary of the Interior, lessor's restrictions on alienation of his lands were removed, and he then protested against the approval of the lease, which was denied and the lease approved. On suit brought to cancel the same as a cloud upon the title to the land involved, it was held by the trial court that the lease was invalid. **Held,** error.

(Syllabus by the Court.)

Kane, J., dissenting.

*Error from District Court, Washington County;*
*John J. Shea, Judge.*

Suit by Fred L. Kelley against the Almeda Oil Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

*Charles C. Julian,* for plaintiff in error.

*W. H. Kornegay,* for defendant in error.

DUNN, J.   This is an action to remove cloud from title, brought originally by defendant in error, hereinafter called plaintiff, against plaintiff in error, hereinafter called defendant, in the United States Court for the Northern Judicial District of the Indian Territory before the admission of the state. After the admission of the state, the cause was transferred under the provisions of the Enabling Act and the Schedule to the Constitution to the district court of Washington county, where there was a trial to the court without a jury, which resulted in a general finding of the facts in favor of plaintiff, and a judgment as prayed for in his petition.

The allegations of plaintiff's amended petition, in substance, are that the land in controversy was allotted to one Edward B. Lynch, a citizen of the Cherokee Nation, in 1904; that the restraints upon his power of alienation were removed by the Secretary of the Interior on the 23d day of January, 1906; that thereafter on the 19th day of February, 1907, Lynch by warranty deed conveyed the land to plaintiff; that on the 13th day of June, 1904, after the allotment of the land to him, Lynch signed and executed an oil and gas lease to defendant covering the land in question (a copy of which lease was embodied in the petition); that the lease was presented to the Secretary of the Interior for his approval and disapproved; that thereafter, after the removal of restrictions upon the alienation of said land, the disapproval of said lease was set aside by the Secretary of the Interior; that the lease, over the protest and against the objection of the allottee, Lynch, and without the consent of plaintiff, was approved on the 19th day of August, 1907, and a copy of such lease approved was delivered to defendant; and alleges that defendant has taken no steps to develop the land and has failed to pay the royalties called for in said purported lease for a period of more than 60 days. The evidence, as set forth in the abstract of defendant, and which appears to be undenied, establishes the citizenship of Lynch; that the land in controversy was his allotment; that restraints upon his authority to alienate were removed by the Secretary of the Interior on the 23d day of January, 1906; that on June 13, 1904, an oil and gas lease subject to the approval of the Secretary of the Interior, was executed by the allottee to the defendant; that February 19, 1906, Lynch protested in writing to the Department of the Interior, against its approval; that one year later he executed and delivered to plaintiff his warranty deed; that after the sale of the land he continued his efforts to secure the cancellation of the lease; that the protest filed by him against its approval was denied, and the same was finally approved August 26, 1907; and that this suit to cancel it was filed 38 days thereafter.

The proof eliminates necessity of consideration of all the averments of the petition upon which plaintiff relies, with the

exception of the authority of the Secretary of the Interior to approve the lease in the face of the protest of. the lessor and after his restrictions on alienation had been removed; but the questions presented by this situation are perplexing and not easy of decision.

The allotment of the grantor was taken by him with restrictions on his right of alienation and his authority to rent the same, and the terms are set forth in section 72 of the act of Congress approved July 1, 1902 (chapter 1375, 32 St. at L. 716), which, among other things, provides:

"Cherokee citizens may rent their allotments when selected for a term not to exceed one year for grazing purposes only, and for a period not to exceed five years for agricultural purposes, but without any stipulation or obligation to renew the same; but leases for a period longer than one year for grazing purposes and for a period longer than five years for agricultural purposes and for mineral purposes may also be made with the approval of the Secretary of the Interior and not otherwise. · Any agreement or lease of any kind or character violative of this section shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

The parties to this contract were both qualified to enter into it; the consideration was valid, the subject-matter legal, and there was a mutuality of obligation depending merely upon the approval of the Secretary of the Interior. The contract is not assailed on any of the grounds which usually render contracts invalid, but solely upon the ground that, prior to the time .when the Secretary acted, one of the contracting parties had changed his mind and desired to withdraw therefrom, and further that his right to deal with his land had been finally and completely vested in him, and hence the Secretary's power or authority to approve it had lapsed.

There is a paucity of authority upon the direct question involved, but in principle the case of *Pickering v. Lomax et al.,* 145 U. S. 310, 12 Sup. Ct. 860, 36 L. Ed. 716, and the cases which have since followed it, to wit, *Taylor et al. v. Brown et al.,* 147 ·U. S. 640, 13 Sup. Ct. 547, 37 L. Ed. 313, *Jones v. Meehan,* 175 U. S. 1, 20 Sup. Ct. 1, 44 L. Ed. 49, *Lykins v. McGrath,* 184 U. S. 169, 22 Sup. Ct. 450, 46 L. Ed. 485, and *Ingraham et al. v. Ward et al.,* 56 Kan. 550, 44 Pac. 14, are sufficiently akin to render

them very persuasive, if not complete, authority for holding that the Secretary of the Interior did not exceed his authority, under the circumstances, in giving to the lease his sanction and approval.

It is to be noted that the statute above quoted provides that allotments may be rented for mineral purposes with the approval of the Secretary of the Interior and not otherwise. The act does not provide within what time the Secretary of the Interior shall be required to make the approval, and, except for the fact that plaintiff in this case had notice of the lease when he purchased, he would not be bound by it.

The Supreme Court of the United States, in the case of *Pickering v. Lomax et al., supra,* which related to the leasing and conveyance of lands owned by certain Indians under the treaty of Prairie du Chien, which provided that the same should never be leased or conveyed to any persons whatever without the permission of the President of the United States, discussing the same, said:

"The treaty does not provide how or when the permission of the President shall be obtained, and there is certainly nothing which requires that it shall be given before the deed is delivered. *Godfrey v. Beardsley,* 2 McLean, 412, Fed. Cas. No. 5,497. It is doubtless, as was said by the Supreme Court of Mississippi in *Doe v. Partier,* 12 Smedes & M. [Miss.] 425, 427, 'a condition precedent to a perfect title' in the grantee; but the neglect in this case to obtain the approval of the President for thirteen years only shows that for that length of time the title was imperfect, and that no action of ejectment would have lain until the condition was performed. Had the grantee the day after the deed was delivered sent it to Washington and obtained the approval of the President, it would be sticking in the bark to say that the deed was not thereby validated. A delay of thirteen years is immaterial, provided, of course, that no third parties have in the meantime legally acquired an interest in the lands. If, after executing this deed, Robinson had given another to another person, with the permission of the President, a wholly different question would have arisen. But, so far as Robinson and his grantees are concerned, the approval of the President related back to the execution of the deed and validated it from that time. As was said by this court in *Cook v. Tullis,* 85 U. S. (18 Wall.) 332, 338, 21 L. Ed. 933, 936: 'The ratification operates upon the act ratified precisely as though authority to do the act had been pre-

viously given, except where the rights of third parties have intervened between the act and the ratification. The retroactive efficacy of the ratification is subject to this qualification. The intervening rights of third persons cannot be defeated by the ratification."

From the record it appears that the defendant has complied with its part of the contract in all particulars. The approval of the lease by the Secretary of the Interior related back to the date of its execution between the parties and rendered it valid from that time. It occurs to us that, if the removal of restrictions on allottee's complete right to lease would have any effect whatever, it would be to render the contract of the parties complete, to be annulled only on or for some of the grounds under which equity gives relief. This conclusion on our part relieves us of a consideration of the character of the case filed, and we have determined the issues between the parties on the record presented as they are argued in the briefs.

Under these circumstances, the judgment of the trial court should be reversed, which is accordingly done, and the cause remanded, with instructions to set the same aside and enter one in accordance with this opinion.

HAYES, C. J., and TURNER, J., concur. WILLIAMS, J., concurs in the conclusion. KANE, J., dissents.