## SCIOTO OIL CO. et al. v. O'HERN.

No. 7055—Opinion Filed Dec. 11, 1917.

(169 Pac. 483.)

(Syllabus.)

1. **Indians—Allotment—Constitutional Provision — Act of Congress—Repeal—Recordation of Instruments—Oil and Gas Lease.**

Section 2, art. 25, Williams' Ann. Const., which extended all laws in force in Oklahoma Territory to the state of Oklahoma, including the laws regulating the recordation of instruments affecting the title to real estate, did not repeal Act Cong. March 1, 1907, c. 2285, 34 Stat. 1015, which provided that the filing of any lease in the office of the United States Indian agent, Union Agency, Muskogee, Ind. T., shall be deemed constructive notice, but said act of March 1, 1907, survived, and an oil and gas lease filed in accordance therewith is effectual to impart notice to all persons subsequently dealing with the lands therein described.

2. **Same—Approval of Lease—Effect on Deed.**

Where C., a full-blood Creek citizen, executed an oil and gas lease upon his allotted land, which lease was filed in the office of the United States Indian agent, Union Agency, at Muskogee, and C. died before its approval by the Secretary of the Interior, and the heirs of C. thereafter conveyed said lands by deed duly approved by the county court, after which said lease was approved by the Secretary of the Interior, held, that the approval related back to the date of the lease, and the grantors in the deeds by the heirs of C. take title subject to said lease.

Error from District Court, Tulsa County; L. M. Poe, Judge.

Action by P. S. O'Hern against the Scioto Oil Company and John M. Ingram. Judg-

ment for plaintiff, and defendants bring error. Reversed, and judgment rendered for defendants.

West, Sherman & Davidson, Biddison & Campbell, Edw. H. Chandler, John R. Wheeler, and J. P. O'Meara, for plaintiffs in error.

Geo. T. Brown, for defendant in error.

W. P. McGinnis and Paul Pinson, U. S. Attys., amici curiæ.

HARDY, J. P. S. O'Hern commenced an action in the superior court of Tulsa county against the Scioto Oil Company and John M. Ingram to quiet title to certain lands. Judgment was rendered in his favor, and the Scioto Oil Company and Ingram prosecute error.

The litigation grows out of this state of facts: Albert Cooper, a full-blood citizen of the Creek Nation, executed an oil and gas lease on the premises August 16, 1912, to John M. Ingram, which was filed in the office of the United States Indian agent, Union Agency, at Muskogee, for the purpose of securing the approval of the Secretary of the Interior, which approval was granted December 29, 1912. Before the approval of said lease Cooper died, and his two brothers, being his only heirs, conveyed said lands to one Fox, which conveyance were approved by the county court, and Fox thereafter conveyed to O'Hern. The lease executed by Cooper to Ingram was assigned to the Scioto Oil Company, who entered into possession of said land for the purpose of extracting oil therefrom. The oil and gas lease was not filed and recorded with the register of deeds of Tulsa county in accordance with the state recording laws, and Fox and O'Hern took title without actual notice of the execution of said lease.

The determination of this case depends upon the answer to the question whether the admission of the state into the Union operated as a repeal of Act Cong. March 1, 1907, c. 2285, 34 Stat. 1026, which provides:

"The filing heretofore or hereafter of any lease in the office of the United States Indian agent, Union Agency, Muskogee, Indian Territory, shall be deemed constructive notice."

Section 2 of the Schedule to the Constitution is as follows:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution and which are not locally inapplicable shall be extended to and remain in force in the state of Oklahoma,

until they expire by their own limitation or are altered or repealed by law."

It is contended that this provision of the Constitution put in force throughout the state the laws of Oklahoma Territory, including the recordation laws, and that the Enabling Act did not preserve and keep in force Act Cong. March 1, 1907. Section 1 of the Enabling Act provides:

"That nothing contained in the said Constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said Territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the Government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this Act had never been passed."

And section 21:

"* * * And all laws in force in the territory of Oklahoma at the time of the admission of said state into the Union shall be in force throughout said state, except as modified or changed by this act or by the Constitution of the state, and the laws of the United States not locally inapplicable shall have the same force and effect within said state as elsewhere within the United States."

These provisions in the Enabling Act were effectual to preserve the authority of the government of the United States over the Indians, their lands, property, or other rights which it had prior to the passage of the act, and the government retained and yet retains the right to control the same which it had prior to the admission of the state, except where that right has been relinquished by Congress. Brader v. James, 49 Okla. 734, 154 Pac. 560. And the legislation of Congress respecting subjects within its jurisdiction derives no force from any agreement or compact with the proposed new state nor by reason of its acceptance of such enactment as one of the terms of its admission, but is effectual solely because the power of Congress extended to the subject, and such legislation was lawfully within congressional authority. Coyle v. Smith, 221 U. S. 559, 31 Sup. Ct. 688, 55 L. Ed. 853; Ex parte Webb, 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248.

An intention to repeal the existing federal laws and regulations respecting the Indians cannot be gathered from the proviso in Oklahoma Enabling Act June 16, 1906 (34 Stat. at L. 267, c. 3335) § 1, reserving to the government of the United States the authority to make laws and regulations in the future respecting such Indians. Ex parte Webb, supra.

A similar question was considered by this court in Jefferson v. Cook, 53 Okla. 272, 155 Pac. 852, and in Thompson v. Cornelius, 53 Okla. 85, 155 Pac. 602, where it was held that the two provisos contained in section 6 of the Creek Supplemental Treaty (Act Cong. June 30, 1902, c. 1323, 32 Stat. 501) were not repealed by sections 13 and 21 of the Enabling Act and section 2 of article 25 of the Constitution, but survived and operated upon the laws of descent and distribution of Oklahoma Territory extended to and put in force in the state so as to limit the same to the extent that only citizens of the Creek Nation and their Creek citizens should inherit the lands of the Creek Nation, and in case there was no person of Creek descent, then the inheritance should go to noncitizen heirs in the order named in the laws of Oklahoma. This was so because it was the intention of Congress that said provisos should survive and should modify the laws of descent and distribution of Oklahoma as above stated.

It is well settled that the state has no control over those matters which are within the exclusive sphere of federal jurisdiction, and when said laws conflict with any law of Congress upon the subject, the state law is superseded. Western Union Tel. Co. v. Bank of Spencer, 53 Okla. 398, 156 Pac. 1175. In Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615, it was held that the lease in question was properly recorded in accordance with section 671 of Mansfield's Digest, which had been adopted by Congress and put in force in the Indian Territory. Congress had designated the places where such leases should be recorded, and there was no local law in conflict therewith. Besides, the filing of same with the Indian agent at the Union Agency, Muskogee, at that time, was purely for administrative purposes, and there was no rule prescribed by the secretary, under his authority, to do so nor any provision of the statutes which made such filing notice to parties acquiring an interest in the property. Neither had such parties any right as a matter of law to examine the records at Muskogee or take copies thereof, and any information obtained by them was given as a matter of courtesy, and not in pursuance to any legal duty. In the present case the act of March 1, 1907, requires the filing of such lease with the Union Agency, and specifically declares that such filing shall be notice, and all parties

are charged with knowledge, of the existence of such leases when so filed, and have the right, under the law, to obtain all the information which was before given as a mere matter of courtesy. To say that Congress may still regulate and control the leasing of restricted lands and at the same time permit legislation of the state to interfere with such control and form the basis of rights acquired antagonistic to those acquired in pursuance to the congressional regulations would be to deny full jurisdiction to Congress in the premises, and would hamper and seriously retard the administrative department of the government in the performance of its functions with reference thereto.

In Anicker v. Gunsburg, 226 Fed. 176, 141 C. C. A. 174, was involved the discretion of the Secretary of the Interior in the approval of different leases upon the same premises submitted to him; it being the contention that the first lease filed as a matter of right was entitled to his approval. This contention was denied, and, referring to the provision of the act requiring the filing of the lease, the court said:

"Whatever may be the effect of the registry provisions in regard to these inchoate leases prior to their approval by the Secretary of the Interior, that effect is confined to imparting notice to parties dealing with the property."

The decisions relied upon in opposition to this view are in cases where no specific provision had been made for the recording of the instruments involved different from that prescribed by the local statutes of the state, and it was properly held that such laws applied; but here Congress has made such provision in the exercise of its jurisdiction to legislate with reference to the property and rights of Indians, and has specifically enacted that the filing of such leases with the Union Agency shall be deemed constructive notice, and no statute of this state could limit the operation of said section nor confer any rights in violation thereof. Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334; Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755; Collins Inv. Co. v. Beard, 46 Okla. 310, 148 Pac. 846. Neither was said lease invalid because not approved prior to the death of Albert Cooper. At the time the lease was executed the parties thereto were both qualified to enter into it. The consideration was valid, the subject-matter legal, and there was a mutuality of obligation depending merely upon the approval of the Secretary of the Interior. Almeda Oil Co. v. Kelley,

35 Okla. 525, 130 Pac. 931; Brader v. James, 49 Okla. 734, 154 Pac. 560.

The contract is not assailed on any of the grounds which usually render contracts invalid, but solely upon the ground that prior to the approval thereof by the Secretary one of the parties had died, and that the Secretary's power or authority to approve the same had lapsed, because the death of the allottee operated to remove the restrictions against the alienation thereof under section 9, Act Cong. May 27, 1908, c. 199, 35 Stat. 315. This contention cannot be sustained.

In Almeda Oil Co. v. Kelley, supra, a lease had been executed and submitted to the Secretary for his approval, and prior to the approval thereof the restrictions of the allottee had been removed, and he thereafter changed his mind and desired to withdraw from said lease, but same was afterward approved by the Secretary. It was contended that because restrictions against the alienation of said land had been removed the Secretary had no right to approve the lease over his protest and objection. This contention, however, was denied, and it was held in accordance with what we have already stated that the contract only needed the approval of the Secretary to be valid in every particular, and that the approval of the Secretary related back to its execution and rendered it valid from that time, and it was further held, that, if the removal of restrictions upon the allottee's complete right to lease would have any effect whatever, it would be to render the contract of the parties complete to be annulled only on or for some of the grounds under which equity gives relief.

In Pickering v. Lomax, 145 U. S. 310, 12 Sup. Ct. 860, 36 L. Ed. 716, the Supreme Court of the United States held, where a deed had been executed under the Treaty of Prairie Du Chien, which provided that the lands should never be leased or conveyed to any person whatever without the permission of the President of the United States, that the neglect to obtain the approval of the President for 13 years after the execution of the deed only showed that for that length of time the title was imperfect, and that the approval of the President after the expiration of that time operated upon the deed precisely as if the authority to execute the same had been previously given, inasmuch as the rights of no third parties had intervened between the date of the deed and the approval thereof, and this was true though

the grantee of said deed had died previous to the approval thereof; and the rights intended to be conveyed to the grantee inured to his heirs, not as a new title acquired by the warrantor subsequent to his deed inures to the benefit of the grantee, but as a deed imperfect when executed may be made perfect as of the date when it was delivered.

In Lykins v. McGrath, 184 U. S. 169, 22 Sup. Ct. 450, 46 L. Ed. 485, it was held that the consent of the Secretary of the Interior to a conveyance by an Indian patentee whose patent prohibited alienation by him or his heirs without such consent may be given after the death of the Indian grantor, and, when so given, is retroactive in its effect, and relates back to the date of conveyance so as to cut off any claim of the heirs of such grantors to the land. In all of these cases it appears that no equities had been acquired superior to those of the grantee in the lease or deed involved. In the present case no such rights could be acquired, because of the act of March 1, 1907, which made the filing of such lease in the office of the Union Agency constructive notice of the execution thereof and the rights intended to be conveyed thereby. The purpose of requiring the lease to be approved by the Secretary was to see that the allottee should not be wronged in any lease he might desire to make, and that the consideration should be ample, and that the lease be subject to no unreasonable qualifications. It was not to prevent the leasing of the premises but to guard against imposition therein, and when the Secretary approved the lease, it was a determination that the purposes for which the restriction was imposed had been fully satisfied, that the consideration was ample, and that there were no unreasonable stipulations contained in the contract. When this was accomplished, justice requires that the lease should be upheld, and to that end the doctrine of relation attaches to the approval of the lease and makes it operative as of the date of the execution thereof. The situation is very much like that where a deed has been fully executed and placed in escrow to be finally delivered on performance of a condition, and the brothers and their grantees who took with the notice imparted, under the act of March 1, 1907, by the filing of the lease in the office of the Indian agent, Union Agency, Muskogee, acquired no equities superior to those of the lessee and his assignee. The brothers were heirs of the allottee, and took all of the title which he had at his death, but when the Secretary approved the lease, their claims as heirs cannot be compared in equity with those of the lessee. They are not in the attitude of bona fide purchasers, and the doctrine of relation intervenes, and makes the approval by the Secretary retroactive and effective as of the date of the lease, and, as the brothers and their grantee have no equitable rights superior to those of the lessee, it follows that the lease must be upheld.

It follows that the court erred in holding that the laws of the territory of Oklahoma extended over the state by virtue of the Enabling Act and the Constitution operated as a repeal of the act of March 1, 1907, and that the judgment should be reversed, and judgment here rendered in favor of the plaintiffs in error quieting their title in and to the lease held by them.

All the Justices concur.