### ANCHOR OIL CO. v. GRAY et al.

(Circuit Court of Appeals, Eighth Circuit. March 24, 1919.)

### No. 5177.

1. INDIANS ⬅16(3)—LANDS—LEASE BY ALLOTTEE—APPROVAL AFTER DEATH.
   The authority of the Secretary of the Interior, under Act April 26, 1906, § 20, to approve and thereby to validate a lease by a full-blood Creek Indian allottee of his or her allotment, continues after his or her death.

2. INDIANS ⬅15(1)—LANDS—ALIENATION—DEATH OF ALLOTTEE.
   The provision of Act May 27, 1908, § 9, that the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of the said allottee's land, does not remove restrictions upon alienation by the acts of such allottee before his death, but leaves such acts subject to the same restrictions that existed while he lived.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. INDIANS ⊕⟹15(1)—RESTRICTIONS ON ALIENATION—DEATH OF ALLOTTEE.
   The provision in Act May 27, 1908, § 9, that no conveyance of any interest of any full-blood heir in such land shall be valid, unless approved by the court having jurisdiction of the settlement of the estate of the deceased allottee, is inapplicable to conveyances made by such heir before its passage and to those made by a full-blood Creek allottee.

4. INDIANS ⊕⟹16(3)—LANDS—LEASE BY ALLOTTEE—APPROVAL AFTER DEATH—EFFECT.
   Lease of allottee of the Five Indian Tribes of his lands, when approved after his death by the Secretary of the Interior, relates back to and takes effect as of the date of its execution, except as against any persons without notice, though it provides its term shall be from approval by the Secretary.

5. INDIANS ⊕⟹16(4)—LEASE BY ALLOTTEE—INEFFECTIVE PROVISION.
   Restriction on alienation by allottee of the Five Civilized Tribes of his land never being removed, provision in his lease as to what shall happen in that event never becomes effective.

6. INDIANS ⊕⟹16(2)—STATES ⊕⟹9—ADMISSION—REPEAL OF FORMER LAWS—INDIAN LEASES—RECORD.
   Act March 1, 1907, declaring the filing in the office of the United States Indian agent, Union Agency, Muskogee, Indian Territory, of a lease of an allotment of Indian land, to be constructive notice, especially in view of it being a special act, is not repealed, annulled, or modified by admission of Oklahoma to the Union, by the recordation statutes of the territory or state (Rev. Laws Okl. 1910, §§ 1154, 1155), by the Enabling Act, the Constitution, or the Schedule to the Constitution of that State.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit by the Anchor Oil Company against W. H. Gray and others. Decree for defendants, and plaintiff appeals. Affirmed.

George T. Brown and Courtland P. Chenault, both of Tulsa, Okl. (John B. Meserve, of Tulsa, Okl., on the brief), for appellant.

Preston C. West, of Tulsa, Okl. (A. A. Davidson, C. S. Walker, and James B. Diggs, all of Tulsa, Okl., on the brief), for appellees.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. This case involves the validity of three oil and gas mining leases of 80 acres of land—one made on December 5, 1914, by Jennie Samuels, a full-blood Creek Indian, the allottee and grantee thereof, who died on October 11, 1915. This lease was filed in the office of the United States Indian agent, now the office of the Superintendent of the Five Civilized Tribes, Union Agency, at Muskogee, Okl., on January 5, 1915, was approved by the Secretary of the Interior on October 21, 1915, and was first filed for record in the office of the county clerk or register of deeds of the county in which the land is situated on August 10, 1916. The defendants and appellees own this lease, and are in possession of and claim the right to mine the land for oil and gas thereunder.

The plaintiff and appellant, a corporation, claims a like right under two oil and gas mining leases, which it owns, of 60 and 20 acres of this land, made respectively by Feney Rogers and Lina White, full-

⊕⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

blood Creek Indians and the sole heirs of Jennie Samuels. These leases were approved by the county court having jurisdiction of the settlement of the estate of Jennie Samuels during the months of December, 1915, and January, 1916, and were recorded in the office of the county clerk or register of deeds of the county where the land is situated prior to August 10, 1916, when Jennie Samuels' lease was first recorded, and the lessees under the leases of Feney Rogers and Lina White had no actual notice of the lease of Jennie Samuels until after they had respectively purchased and paid value for them in good faith. The facts which have been recited were disclo; ed by the petition of the plaintiff, in which he prays for possession of the land, for an adjudication of the invalidity of the lease of Jennie Samuels, of the validity of the leases of her heirs, and for a recovery of damages on account of the possession and use of the land by the defendants. The court below dismissed the petition, upon the motion of the defendants, on the ground that the lease of Jennie Samuels was valid, and that the defendants' possession and their mining of the land thereunder were lawful.

[1-3] Counsel for the plaintiff assail this conclusion on the ground that the Secretary was without jurisdiction or authority to approve the lease of Jennie Samuels, a full-blood Creek Indian, after her death, and that, as his approval was not made until 10 days after she died, her lease became void. In support of this position they argue that the authority of the Secretary to approve and thereby to perfect oil and gas mining leases of their allotments by full-blood allottees of the Creek Tribe, which was granted by section 20 of the act of April 26, 1906 (34 Stat. 137, 145, c. 1876), ceased at the death of the allottee, by reason of the provision of section 9 of the act of May 27, 1908 (35 Stat. 315, c. 199):

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of the said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

But where the validity of a conveyance of land or of leases thereof is conditioned by the approval of different officers or by different restrictions at different times, the law in force at the time of the deed or lease determines the restriction upon its validity, and where at that date a specified officer is empowered to approve and validate it, that officer, or his successor in office, may lawfully do so after subsequent legislation has conditioned the validity of like conveyances or leases with the approval of a different officer or with different restrictions, and the true construction of section 9 of the act of May 27, 1908, is that it is prospective and not retrospective in effect, that it applies to conveyances and leases made after its passage and is inapplicable to those made before its enactment, and that the Secretary of the Interior had plenary authority to approve and validate the lease of Jennie Samuels after her death notwithstanding the provision of section 9 of the act of May 27, 1908. Scioto Oil Co. v. O'Hern (Okl.) 169 Pac. 483; Harris v. Bell, and authorities cited in 250 Fed. at page 214, 162 C C. A. 345.

Counsel insist, however, that the Secretary's power to approve the lease ceased because under section 9 of the act of 1908 the death of the lessor removed all restrictions upon alienation of the land. But that removal did not change the status of Jennie Samuels' lease, did not remove the restriction upon the alienation by her, for those restrictions persisted until she died, and she could not alienate her land after her death. She had leased her land, subject only to the approval of the Secretary, and her heirs, so far as her lease was concerned, stepped into her shoes upon her death. The lease estopped them, as it did her, from revoking it or conveying the land free from it, unless the Secretary, in the exercise of his judicial discretion, refused to approve it, and, when he approved it, the estoppel became absolute upon all of them alike.

[4] The only restrictions on alienation removed by her death were the restrictions on the alienation of the rights in the land which descended to her heirs upon her death, and those rights were inferior and subject to the rights of the lessees of Jennie Samuels to the full benefit of the lease, if it was subsequently approved by the Secretary. It was so approved, and then the lease became impregnable to the attacks of the heirs and those claiming under them with notice of the conditional lease. Scioto Oil Co. v. O'Hern (Okl.) 169 Pac. 483; Almeda Oil Co. v. Kelley, 35 Okl. 525, 130 Pac. 931; Pickering v. Lomax, 145 U. S. 310, 12 Sup. Ct. 860, 36 L. Ed. 716; Lykins v. McGrath, 184 U. S. 169, 22 Sup. Ct. 450, 46 L. Ed. 485.

Another contention of counsel for the plaintiff is that the lease of Jennie Samuels was inferior in right to the leases of her heirs: (1) Because it did not take effect until it was approved by the Secretary, and that approval was made after the leases of her heirs had been made and had been duly approved; and (2) because the lease of Jennie Samuels itself provided that the term thereof should be ten years from the date of its approval by the Secretary of the Interior and that—

"In event restrictions on alienation shall be removed from all the leasehold premises described above, this lease shall be released from the supervision of the Secretary of the Interior, such release to take effect without further agreement, from the date such restrictions are removed, and thereupon the authority and power delegated to the Secretary of the Interior as herein provided shall cease."

But whether or not the lease of Jennie Samuels was inferior to the lease of her heirs depends upon the question whether or not the lessees in the latter lease had constructive notice of the former lease, a question which will be hereafter considered. There was nothing in her lease, or in the conduct of the parties to it, to indicate any bad faith or any attempt to evade the restrictions on alienation imposed by the act of Congress, and her lease was neither void nor voidable because the parties made and delivered it subject to the approval of the Secretary before the term of the lease commenced to run. Subject to that approval the parties to this lease, by the execution and delivery thereof, estopped themselves, and those claiming under them with notice of the lease, from denying, revoking, or avoiding it, when approved by the Secretary, except for fraud or mistake; and, when it was approved by the Secretary, as against the parties to it and

those claiming under them with notice, it related back to and took effect as of the date of its execution by the parties named therein. Pickering v. Lomax, 145 U. S. 310, 314, 316, 12 Sup. Ct. 860, 36 L. Ed. 716; Lomax v. Pickering, 173 U. S. 26, 27, 19 Sup. Ct. 416, 43 L. Ed. 601; Lykins v. McGrath, 184 U. S. 169, 171, 172, 22 Sup. Ct. 450, 46 L. Ed. 485.

[5] Nor is there anything in the clause of the lease regarding the removal of all restrictions to reverse or modify this result, because all restrictions on alienation of the land never were removed until the Secretary approved the lease. The death of Jennie Samuels did not remove, but perpetuated, the restriction on her alienation of her land, for, after she died, the only act which she had done by which the land could be alienated was her lease, and the alienation by that lease was so restricted that it could have effect only when approved by the Secretary. Therefore the condition on which alone the clause of the lease was to take effect never was fulfilled, and the clause never became operative. Again, if all restrictions had been removed, and if this clause had become lawful, valid, and effective, its effect by virtue of the principle of relation would have been to have estopped Jennie Samuels and her heirs and those claiming under them with notice of the conditional lease from successfully assailing it; and the result is that the lease made by Jennie Samuels on December 5, 1914, and approved by the Secretary on October 21, 1915, was lawful and valid against all parties claiming under her or her heirs with notice that she had made such a lease.

[6] Counsel for the plaintiff, however, say that, notwithstanding all this, it is entitled to prevail in this suit because it is a bona fide purchaser for value of the leases it owns, without any notice of the lease of Jennie Samuels until after it had purchased and paid for the leases under which it asserts its right to this property. They urge that the lease made by Jennie Samuels was not filed or recorded in the office of the county clerk or register of deeds of the county in which the land was situated until after the plaintiff had made and paid for its leases, and had duly recorded them and the other evidences of its title from the heirs in the office of the county clerk. This is conceded by the defendants. But the plaintiff's petition avers that on June 5, 1915, before the leases from the heirs under which the plaintiff claims were obtained, the lease of Jennie Samuels was filed in the office of the United States Indian agent, now the office of the Superintendent of the Five Civilized Tribes, Union Agency, at Muskogee, Okl., under and pursuant to the provision of the act of Congress of March 1, 1907, which declares that "the filing heretofore or hereafter of any lease in the office of the United States Indian Agent, Union Agency, Muskogee, Indian Territory, shall be deemed constructive notice" (34 Stat. 1026, c. 2285); and the defendants contend, and the court below held, that this filing charged the plaintiff and those under whom it claims with notice of that lease. Counsel for the plaintiff argue that this provision of the act of Congress was either repealed or superseded by the admission of the state of Oklahoma into the Union, and by the provisions of the Enabling Act of

Oklahoma, of the Constitution and of the Schedule to the Constitution of that state which became effective November 16, 1907, a few months after the act of Congress of March 1, 1907. This argument presents the second question in this case, the question whether or not the Act of March 1, 1907, was still in force when the plaintiff obtained its leases.

When the act of March 1, 1907, was passed, and when the Enabling Act, the Constitution of Oklahoma, and the Schedule to it took effect, there were in force in the territory of Oklahoma, and since have remained in force in the state of Oklahoma, these provisions with reference to the execution, and record of instruments relating to real estate which may be found in sections 1154 and 1155, Revised Laws of Oklahoma 1910:

"No deed, mortgage, contract, bond, lease or other instrument, relating to real estate other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as herein provided." Section 1154.

"Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors." Section 1155.

The provisions of the Enabling Act, the Constitution, and the Schedule to it invoked, together with the statutes just recited, to nullify the provision of the act of Congress in question are these: Section 1 of the Enabling Act provides:

"That nothing contained in the said Constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said territories (so long as such rights shall remain unextinguished) or to limit or to affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands, property or other rights by treaties, agreement, law or otherwise, which it would have been competent to make if this act had never been passed." 34 Statutes at Large, 267; Revised Laws of Oklahoma of 1910, p. lxxiii.

Section 21 contains this clause:

"And all laws in force in the territory of Oklahoma at the time of the admission of said state into the Union shall be in force throughout said state, except as modified or changed by this act or by the Constitution of the state, and the laws of the United States not locally inapplicable shall have the same force and effect within said state as elsewhere within the United States." 34 Statutes at Large, 277, 278; Revised Laws of Oklahoma 1910, p. lxxviii.

Section 2 of the Schedule to the Constitution of Oklahoma declares that:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law." Revised Laws of Oklahoma 1910, p. cxcix.

But careful study of these provisions of the statutes, of the Enabling Act, and of the Constitution of Oklahoma and its Schedule, and a comparison of them with that part of the act of Congress of March 1, 1907, which declares that the filing of a lease with the Indian agent

shall be deemed constructive notice, fails to convince that they either have or were intended to have the effect of repealing or superseding that provision. In the first place, none of them expressly or by the plain meaning of its terms repeals or modifies it or limits its effect, and the legal presumption from this fact is that neither the United States nor the state intended so to do. In the second place, the subject-matter of the Indians, their lands, the allotment and distribution of those lands to the Indians in severalty, the leases, sales, deeds, and disposition by the allottees of their lands, the restrictions upon their alienation thereof, the extent of the rights and privileges of their lessees and claimants to this land, were and had been for more than a century within the exclusive jurisdiction of the United States and beyond the jurisdiction of the states, except in cases where the United States had renounced or released its control, and the legal presumption, evidenced and sustained by section 1 of the Enabling Act, was and is that nation and state alike intended to maintain that relation and situation wherever they have not by the plain terms of their legislation disclosed a contrary purpose. And no legislation or action exhibiting such a purpose is perceived in the statutes, the Enabling Act, the Constitution or the Schedule, to which reference has been made.

Again, the portion of the act of the United States of 1907 relating to the constructive notice given to subsequent purchasers and others, by the filing with the Indian agent of a lease of an allotment of Indian land, was special legislation, limited in its terms and effect to a single subject, leases of Indian lands, and to a particular class of persons, those affected by such leases, while the statutes of Oklahoma upon this subject of the constructive notice resulting from the recordation of instruments relating to real estate were general in their nature, treating of all classes of such instruments and of all classes of persons affected thereby. It is a cardinal rule of the construction of statutes that specific legislation in relation to a particular class or subject is not affected by general legislation in regard to many classes or subjects, of which that covered by the specific legislation is one, unless it clearly appears that the general legislation is so repugnant to the special legislation that the legislators must be presumed to have intended thereby to modify or repeal it; but the special and the general legislation must stand together, the former as the law of the particular class or subject, and the latter as the general law upon other subjects or classes within its terms. State v. Stoll, 17 Wall. 425, 436, 21 L. Ed. 650; Washington v. Miller, 235 U. S. 422, 427, 428, 35 Sup. Ct. 119, 59 L. Ed. 295; Harris v. Bell, 250 Fed. 209, 216, 162 C. C. A. 345; Stoneberg v. Morgan, 246 Fed. 98, 101, 158 C. C. A. 324; Sweet v. United States, 228 Fed. 421, 427, 143 C. C. A. 3; Priddy v. Thompson, 204 Fed. 955, 958, 959, 123 C. C. A. 277, 280, 281; Christie Street Commission Co. v. United States, 136 Fed. 326, 333, 69 C. C. A. 464, 471. If the portion of the act of March 1, 1907, relating to the constructive notice resulting from the filing of a lease of an allotment of Indian land, and the provisions of sections 1154 and 1155 of the Revised Statutes of Oklahoma of 1910 had been

enacted by a legislative body of the same state, they might have stood and have been enforced together under this rule. By so much the more should they and must they so stand and be enforced, now that the one is the act •of the nation, which has general and exclusive jurisdiction of the subject and class of which it treats, and the ·others are the acts of the state, which has jurisdiction over all similar subjects and classes, but none over this one.

In the opinion of this court the portion of the act of March 1, 1907, which relates to the constructive notice given to subsequent purchasers and others by the filing of a lease made by an allottee of an allotment of Indian land made by the United States, was neither repealed, annulled, nor modified by the subsequent admission of Oklahoma into the Union, by the recordation statutes of the territory or state found in Revised Laws of Oklahoma of 1910, §§ 1154 and 1155, by the Enabling Act, the Constitution, or the Schedule to the Constitution of that state. And if upon an independent investigation of the questions in this case any doubt had remained, the clear, concise, and conclusive opinion of the Supreme Court of Oklahoma in Scioto Oil Co. v. O'Hern, 169 Pac. 483 would have dispelled it.

Let the decree below be affirmed, with costs against the appellant.