## CENTRAL NAT. BANK OF TULSA, OKL., v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 11, 1922.)

No. 5626.

1. **Indians ⊚⇒27(5)—United States held authorized to bring suit on certified check for bonus for Indian's lease.**

Where a bank refused payment on a certified check for bonus for oil and gas lease executed by guardian of full-blooded Indian minor on a portion of his restricted allotment, following attempted withdrawal by lessees of application for approval of lease, it was proper for the United States to recover from the bank the amount of the check, in view of regulation of Interior Department, providing for the control and disposition of "royalties, rents, and payments," since the government, having a right under such regulation to collect the bonus, had a right to bring an action on a certified check therefor.

2. **Indians ⊚⇒16(3)—Lessees could not withdraw application for approval of oil and gas lease.**

Lessees to whom guardian of full-blooded Indian minor had executed an oil and gas lease on a portion of his restricted allotment, and who had made an application for the approval of such lease, could not withdraw application prior to such approval.

3. **Indians ⊚⇒16(3)—Bank could not refuse payment of certified check for bonus for lease, where Secretary of the Interior approved lease, though lessees attempted to withdraw application for approval.**

Where lessees placed in escrow certified check for bonus for lease on the condition that the check be returned to lessees, on failure of Secretary of the Interior to approve lease within 60 days, the bank could not refuse payment thereon, on approval of lease within the 60 days, though prior to approval thereof the lessees attempted to withdraw application for approval, notwithstanding irregularity of making check subject to negotiation only in event of approval of lease within 60 days, since the Secretary of the Interior, by approval of lease within the 60-day period, waived irregularity, and neither the bank nor the lessees could complain thereof.

4. **Indians ⊚⇒16(3)—Lessees could not predicate withdrawal of application for approval of lease on letter of Indian superintendent.**

Lessees could not predicate withdrawal of application for approval of Indian's lease on portion of restricted allotment on a letter of the Indian superintendent, since the superintendent had no authority to act on the lease; the approval of the lease being a matter for the Secretary of the Interior.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. Indians ⬅️16(3)—Premature delivery of certified check for bonus for lease placed in escrow held not to affect bank's liability thereon.

Where lessees placed certified check for bonus for Indian's lease on portion of restricted allotment in escrow, on condition that the check be returned on failure of the Secretary of the Interior to approve lease within 60-day period, the fact that the check was prematurely delivered did not affect the bank's liability thereon, on approval of lease within the required time.

6. Indians ⬅️16(3)—That applicants for approval of Indian lease did not ratify lease after approval, or make claim thereunder did not affect their liability for bonus.

Where lessees placed certified check for bonus for Indian lease on portion of restricted allotment in escrow, on the condition that it be returned if the Secretary of the Interior failed to approve the lease within the 60-day period, the fact that the lessees, who made ineffectual attempt to withdraw application for approval of lease, did not ratify the lease after approval thereof by the Secretary of the Interior, and made no claim under it, did not affect the Indian's right to the amount of the check.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Joseph W. Woodrough, Judge.

Action by the United States against the Central National Bank of Tulsa, Okl. Judgment for plaintiff, and defendant brings error. Affirmed.

Preston C. West and A. A. Davidson, both of Tulsa, Okl. (Roger S. Sherman and Grey Moore, both of Tulsa, Okl., on the brief), for plaintiff in error.

L. K. Pounders, Sp. Asst. U. S. Atty., of Bristow, Okl. (C. W. Miller, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before HOOK, Circuit Judge, and COTTERAL and JOHNSON, District Judges.

COTTERAL, District Judge. This action was brought by the United States to recover of the Central National Bank, of Tulsa, Okl., the amount of a check of J. E. Crosbie and C. J. Wrightsman, for $18,150, which was certified by that bank. The petition alleges that on February 27, 1914, R. P. Brewer, guardian of Albert Carney, a full-blood Choctaw Indian minor, executed an oil and gas lease upon a portion of his restricted allotment in Carter county, Okl., in favor of Crosbie and Wrightsman, for an agreed consideration (or bonus) of $18,150; that the lease, which was signed by the parties, was approved by the county court of Carter county, and on April 20, 1914, was approved by the Secretary of the Interior; that the said check for the bonus was delivered to the guardian, and assigned respectively to the cashier and disbursing agent of the government at Muskogee, Okl.; that payment of the check was refused on April 24, 1914, and July 5, 1918, and, it was protested, and remains unpaid. The check contains this indorsement:

"This check not to be negotiated until after the approval of this lease by the Secretary of the Interior, which approval must be within 60 days from the date hereof, and if not so approved this check to be returned to the Central National Bank, Tulsa, Okl."

A copy of the lease was exhibited, from which it appears that the premises were let for a period of 10 years, upon a consideration of $1 and the payment of royalties, and subject to various regulations. The defendant moved to dismiss the petition on the grounds that it fails to state facts sufficient for relief, or to show jurisdiction of the court, or an interest of the plaintiff in the subject matter of the action. The motion was overruled and exception saved.

The bank answered, denying plaintiff's ownership of the check or legal capacity to sue upon it, and alleged that the check was deposited with the First National Bank at McAlester, Okl., as a stakeholder and by way of escrow, for delivery only in compliance with an agreement between the makers and payee, and had been negotiated and delivered in violation thereof, and was without consideration to the makers. It was further alleged in the answer that the agreement was the makers were to pay the bonus after approval of the lease by the Secretary of the Interior within 60 days; that the check was deposited with the McAlester bank for negotiation and delivery or return to the defendant, as specified by the indorsement; that the lease was filed at the Union Agency at Muskogee, and shortly thereafter, and before March 21, 1914, and before such approval, the check was delivered by that bank to the guardian, and transferred by him without the consent of the makers and the defendant; that on March 21, 1914, the United States Indian superintendent demanded of the makers the payment of the check as a condition to favorable action upon the lease, and at the same time notified them that, before it was filed, another lease had been filed from another guardian of the allottee in favor of Jake L. Hamon; that it was not probable action could be had upon their lease within 60 days, owing to necessary investigation to determine the conflict, and demanded to be informed at once whether they intended to compel performance of their agreement with the guardian, or would extend the time for approval of the lease and pay the check at his office. It was also alleged in the answer that, Crosbie and Wrightsman being unwilling to abandon or modify their agreement and believing their rights would not be settled without litigation, that it would extend the time of approval beyond 60 days, and would probably result adversely to them, and that the check had been negotiated in violation of the contract, withdrew their application to have the lease approved and all claims to the land, or to the contest with Hamon, so notified the superintendent, and demanded a return of the check; that the Hamon lease had priority in filing and approval, but that their lease was forwarded to the Secretary of the Interior with recommendation for approval, without notice to them; that they never accepted the lease, took possession of the land, paid any rentals, or claimed any rights under the lease. A former tender of the fund in court was formally withdrawn.

The trial was to a jury. Evidence was introduced on both sides, and at the close the court sustained a motion to direct a verdict in favor of the plaintiff. Thereupon judgment was rendered against the defendant for the amount of the check, with interest. The assignments urged for reversal are, in substance, that the trial court erred in holding that the government was entitled to maintain the action, admitting and excluding evidence, and ruling against the defense that the lessees

withdrew their application for the lease before action was had thereon by the Secretary of the Interior, with the acquiescence of the Indian Superintendent. It will suffice, for the purposes of our decision, to condense the evidence, and specially refer only to the rulings upon the correspondence between the superintendent and the lessees.

R. P. Brewer, the guardian, testified that he received by mail the certified check, together with a telegram from the defendant, dated February 25, 1914, addressed to him as cashier of the First National Bank, of McAlester, Okl., and that he indorsed and sent the check to W. M. Baker, the cashier of the Union Indian Agency. The telegram was as follows:

"Crosbie and Wrightsman are forwarding through us certified check in favor of R. P. Brewer, guardian of Albert Carney, for eighteen thousand one hundred fifty dollars to be paid in cash to you on approval by Secretary of Interior of oil and gas lease covering thirty acres. Said lease must be approved within sixty days from date."

Mr. Baker testified that he handled bonuses for leases of full-blood Indians when paid to his office, and credited and disbursed them in favor of the Indians; that demand was made for the payment of this check within the 60-day period at the instance of the Indian superintendent at Muskogee, and at the time he delivered a copy of the lease to Mr. Wrightsman. He did not know that the lessees had applied to withdraw the lease. He held the check about 10 days—until March 21, 1914—and then forwarded it to the superintendent in compliance with the rule of the department.

Mr. Wrightsman testified as follows: He drew the check in conjunction with Mr. Crosbie, and it was certified and sent to the bank at McAlester, at their instance. Mr. Baker delivered to him a quadruplicate copy of the lease on April 24, 1914, in a sealed envelope, when he was busily engaged. Finding later it contained the lease, he searched for Mr. Baker in vain to redeliver it. On April 29, 1914, he returned it to Mr. Baker, by registered mail, stating the fact, and declining to accept delivery of the papers. He said they never took possession of the land, that no royalties were demanded of them, and there was no notice they were due.

The witness also sought to show a custom of paying bonuses to Indian lessors, if adult, and not to an officer of the department. But objection was sustained to this, on the ground that the regulations of the Interior Department found in section 25, April 20, 1908, required all royalties, rents or payments due minors or incompetents to be held by the agency, etc. He had no recollection of receiving a notice to pay rents or royalties, saying he repudiated the transaction in April, 1914. The witness could not say whether the lease enhanced or depreciated in value within 60 days; but it became impaired, and he could not fix the time. If he knew of it, at the time of repudiation, it might have furnished a feeling he was protecting himself—his legal rights at the time. He held the lease 20 days.

Mr. Kelsey, the Indian superintendent at Muskogee, sent a letter to the lessees, of date March 21, 1914, and it was answered by their letter of March 31, 1914. Mr. Dillard, their attorney, testified to dictating

the letter. The former of these letters was admitted, and afterward stricken out. The latter was excluded on objection.

The letter of Mr. Kelsey called attention to their agreement to pay the bonus of $18,150 on approval of the lease, advised them of his receipt of the telegram, and his inference that the money had not been paid to Mr. Brewer, but was placed in escrow, to be returned in event the lease should not be approved within 60 days from its date. The letter also stated there was nothing to show this in the lease, court orders, or papers; that, as they had delayed executing the lease 20 days, it was not probable, owing to a conflicting lease to Hamon, their lease, if superior, could be submitted and approved within 60 days from date; that the guardianship presented a legal problem, which might require court action and decision, and the office must investigate the facts. It was added: The practice was to require payment of the bonus to be disbursed on approval of the lease by the department, and they were required to pay the same into the office before the lease could receive favorable consideration. He wished to be informed by return mail "if you intend to prescribe a time limit, * * * if your offer is to hold good, and it is your intention to pay into this office at once the bonus consideration agreed upon, so that I may determine the action to be taken in the premises." By a postscript, it was stated that he would set the matter for hearing as soon as the bonus should be paid and a waiver received of the time limit of 60 days. Their answer was as follows:

"Referring to your recent letter to Messrs. Crosbie and Wrightsman, in reference to the above matter, in which you stated that, as soon as the $18,150 bonus for the above lease was deposited with your department, you would set the matter of the approval of the lease, arising on account of a conflicting lease, down for hearing. We beg to say that, in view of the conflict in this title, and of the fact that the decision of the question by your department will not be final, and that matter will have to be litigated in the state court before the title can be cleared, and since our agreement in taking the lease was that the approval should be within 60 days, and it was contemplated that the title to the property conveyed to us should be good, it seems that it will be utterly impossible to get approval by the department and clear the title to this property within the 60 days' limit. Under these circumstances we do not care to lengthen the time in which we were to acquire the property, and therefore desire that the application for the approval of the lease be disallowed, and the check to R. P. Brewer, guardian, of date February 25, 1914, in the sum of $18,150, bonus on this lease, which was put in escrow, but has been transferred to you, be returned to us.

"We beg to remain very truly yours,　　　　J. E. Crosbie,
　　　　　　　　　　　　　　　　　　　　　　　"C. J. Wrightsman,
　　　　　　　　　　　　　　"By F. B. Dillard, Their Attorney."

[1] With respect to the interest of the government as a basis of suit for the protection of the Choctaw minor Indian allottee, we find no difficulty upon principle and a consideration of the decisions. Mullen v. United States, 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834; Heckman v. U. S., 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820; Goat v. U. S., 224 U. S. 458, 32 Sup. Ct. 544, 56 L. Ed. 841; U. S. v. Gray, 201 Fed. 291, 119 C. C. A. 529; Bowling v. U. S., 233 U. S. 528, 34 Sup. Ct. 659, 58 L. Ed. 1080. The duty and power of the government to enforce the restrictions imposed against alienation of such allotments cannot be doubted, and they are equally applicable to the allotments and

the returns from them. A distinction is sought to be made between a bonus for a lease and royalties accruing under it. But we find no substantial reason for it, as both arise as considerations for the lease, which in Oklahoma transfers an interest in real estate. Rich v. Doneghey, (Okl.), 177 Pac. 86, 3 A. L. R. 352; Parker v. Riley, 243 Fed. 42, 155 C. C. A. 572; Hoyt v. Fixico (Okl.), 175 Pac. 517. Furthermore, a bonus is a payment fairly included in the regulation of the Interior Department, which provides for the control and disposition of "royalties, rents, and payments." It was immaterial whether, as contended by the defendant, a custom may have been suffered to grow up of paying a bonus to the Indian. It could not affect the power to require its payment to the agency. It was competent, therefore, for the government, charged by law with the conservation of the land, to collect the bonus derived from the lease in question, and hence to bring and prosecute this suit on the merits.

The next question arises on the merits as to the recovery of the bonus, represented by the certified check. Counsel have deemed it important to insist, and have cited authorities to show, that the bank may interpose the same defenses as the makers of the check, in view of the fact that it was certified at their instance. We may assume they are right in this contention, as it cannot affect the result.

[2, 3] The first inquiry is whether the applicants were at liberty to withdraw their application for the lease, under the facts in this case. By the decisions applicable in general they had no such privilege, but were bound to await the departmental action. Almeda Oil Co. v. Kelley, 35 Okl. 525, 130 Pac. 931; Anchor Oil Co. v. Gray, 257 Fed. 277, 168 C. C. A. 361. Their application appears to have been irregular in the respect that the check was subject to negotiation only in event of approval of·the lease by the Secretary of the Interior within 60 days. The regulations contemplated a deposit or payment of the bonus; but if the Secretary saw fit to waive the requirement, and to act favorably upon the lease within the limit fixed, it was a matter of which the applicants and the bank could not complain, and the check by its terms was as available as a cash payment. As the conditions to its use were met, the appropriation of the check was justified, unless there was an effective withdrawal of the application for the lease.

[4] The withdrawal could be predicated only on the letter of the Indian superintendent, dated March 21, 1914, purporting to require absolute payment as a condition to any action, and asking the applicants to extend the period for approval, and offering to fix a hearing of a controversy with another applicant. The same question was decided by the Oklahoma Supreme Court, in Crosbie et al. v. Brewer et al., 173 Pac. 441. It was held that the province of acting upon the lease was vested by Congress in the Secretary of the Interior, and that the superintendent had no such authority. We agree with that court. And this eliminates the supposed rights of the applicants to avoid the responsibility which attached to them by virtue of their successful bid for this lease, their execution of it jointly with the guardian, the deposit of the check, and the submission of their application to the Secretary. They were bound to know that the law did not authorize the superintendent to·release them, at least in the absence of some de-

partmental regulation or order to that effect, and for this reason the withdrawal could not be effective.

[5, 6] We must hold, therefore, that as the exact condition indorsed upon the check was met, namely, that the Secretary should approve the lease within 60 days, the lease became valid, and the check subject to collection. It is urged that there was a premature delivery to the guardian of the check put in escrow at the McAlester bank. This must be immaterial, as possession of it by him was rightful when the lease was approved, and the collection of it has been sought in conformity with the terms on which it was furnished. The fact that the applicants never ratified the lease afterward, or made any claim under it, does not aid them. They acquired the rights of lessees upon their terms, and cannot be heard to complain of hardship, if they mistakenly abandoned those rights. The letter of the superintendent and the answer thereto were inadmissible for any purpose, and were rightfully excluded. There were no unwarranted rulings.

There was no legal evidence received or offered at the trial which tended to exonerate the defendant from liability on the certified check. For this reason, the direction of a verdict in favor of the plaintiff was justified, and the judgment at the trial court is accordingly affirmed.

Judge HOOK participated in the hearing of this case and concurred in the affirmance of the judgment, but died before the opinion was prepared.