## Lapida v. Goodman et al.

*W. K. Ravety*, for plaintiff.

*H. E. Skaroff*, for defendants.

GORDON, JR., P. J., September 19, 1947.—This is a bill in equity against a husband and wife for specific performance of an agreement, executed by the wife when she was a single woman, for the sale of premises 4262 Parkside Avenue, in the City of Philadelphia, and the case is before us for adjudication upon bill, answer

and proofs. The facts are not in dispute, and the question of law presented for our determination is whether a purchaser of real estate from a single woman, who marries before the date fixed for settlement, can compel both her and her husband, whom she married after execution of the agreement of sale, to join in conveying the property to him. The husband refuses to join in the conveyance because he was not a party to the agreement, and the wife, who, as a single woman, would have no legal defense to the action, declines to make a separate conveyance of the land alone on the ground that section 1 of the Married Women's Property Act of June 8, 1893, P. L. 344, renders her incompetent to convey her separate real estate without the joinder of her husband. Except for this assertion of her incompetency to make a valid conveyance without her husband, the wife defendant does not question plaintiff's right to require specific performance from her. Plaintiff, on the other hand, is unwilling to accept a deed from the wife alone, and demands a conveyance from both the husband and wife as the only means by which he can acquire a permanently unchallengeable title to the land.

With respect to the third defendant, Daniel Goodman, who is the father of wife defendant, the parties agreed at the hearing that he is eliminated from the controversy, and that the bill may be formally dismissed as to him.

When the case came on for hearing no testimony was taken, the parties agreeing that the undisputed and controlling facts might be found from the pleadings, from which we therefore make the following:

## Findings of fact

1. On February 1, 1946, David Lapida, plaintiff, entered into a written agreement with one Martin W. Gelber, agent for defendant, Leonora Goodman, now known as Leonora G. Jacobs, for the purchase from

said defendant of premises 4262 Parkside Avenue, Philadelphia, Pa., which said written agreement is set forth at length in the bill in equity filed in this case and incorporated herein by reference.

2. By its terms the said agreement of sale was made subject to the written approval of defendant, Leonora Goodman Jacobs, who was then a single woman, sui juris, and the real and registered owner of said property; and on the day following its execution as aforesaid, to wit, on February 2, 1946, said defendant approved said agreement in writing, and plaintiff paid, and said defendant accepted and received, the sum of $500 as down money on account of said agreement, thereby making the same in all respects valid and binding upon said defendant.

3. The agreement of sale provided for a purchase price of $12,300, the balance of which ($11,800), after deducting the $500 down money paid by plaintiff, was made payable at the time of settlement, which the agreement provided should be on June 1, 1946. Said agreement also provided for possession to be delivered "by deed and assignment of existing written leases to the four apartments therein to be produced, together with O. P. A. registration, and that possession to the first floor apartment, then occupied by the third defendant should be given at the time of settlement".

4. Defendant, Leonora Goodman, married the other defendant, George D. Jacobs, on February 24, 1946.

5. Plaintiff arranged for settlement of the said premises for Friday, May 31, 1946, at 10:30 a.m., at the Land Title Bank and Trust Company, and duly notified defendant, Leonora Goodman, and her husband, George D. Jacobs, accordingly.

6. Although defendants received notice of the time and place of settlement, as aforesaid, they failed to appear thereat, and have continuously to the present time neglected and refused to complete said settlement,

notwithstanding the covenant and undertaking of .the said Leonora Goodman, entered into while she was a single woman and sole owner of the premises in question, to sell and convey the same to plaintiff.

7. The only reason given by defendants for refusing to convey the property to plaintiff are, first, as to husband defendant, that he was not a party to the agreement of sale, and therefore cannot be compelled to join in the conveyance of the premises in question to plaintiff; and, second, as to wife defendant, that, being now a married woman, she is incompetent, by reason of her coverture, to convey her separate real estate without the joinder of her husband.

## Discussion

From the foregoing findings, it is evident that wife defendant has no legitimate defense to this action. She sold the property to plaintiff for a good and valuable consideration, and thereafter held the bare legal title, stripped of every substantial interest therein, as trustee for plaintiff. While she was still a single woman, plaintiff was entitled to specific performance of her agreement upon payment of the balance of the purchase money. She neither could have rescinded the agreement and returned the "down money", nor, by any voluntary act of her own, could she have deprived plaintiff of any right or interest he acquired under it. From the moment she signed the agreement and accepted the down money, she held nothing but the bare legal title to the property, and her purely voluntary act of marriage was ineffective to enlarge her interest, or to destroy any of the rights plaintiff gained by the agreement. So far as she is concerned, we think it is clear that her marriage does not relieve her in the slightest degree from the duty to carry out her agreement. While the Married Women's Property Act does provide that a married woman "may not mortgage or convey her separate real estate unless her husband join in the

mortgage or conveyance", it operates only on those rights in real estate which the wife possesses at the time of her marriage, and was certainly never intended to endow the wife with the means of repudiating her deliberate acts as a single woman, or to permit her to evade the performance of obligations she made in that status by which she completely divested herself of every legal interest in a particular piece of property. To hold otherwise would enable a single woman arbitrarily to avoid her contracts, and open the door to the defrauding of those who deal with such a person in good faith and in reliance upon well-settled principles of law. Wife defendant's refusal, therefore, to appear at the settlement and to perform her contract is legally inexcusable, and the only question remaining for our consideration is whether, in view of the language of the Married Women's Property Act, equity will support husband defendant in his refusal to join his wife in conveying the property to plaintiff or will compel him to do so.

There seems to be a singular dearth of precedent upon this question, both in our own State and in other jurisdictions. The diligence of counsel and our own examination of the authorities has failed to discover any decision directly ruling it. The only case in any way approximating a consideration of the question is Vorheis v. Kitch et ux., 8 Phila. 554, decided in 1871 by President Judge Trunkey. In it plaintiff and his wife entered into a contract for the sale of a piece of real estate to one of defendants, and subsequently executed a deed therefor to her, which they placed in escrow pending payment of the balance of the purchase money. Thereafter, plaintiff's wife died. He married again, and then brought an equitable action in ejectment against the purchaser to enforce performance of the contract. Defendant paid the balance of the purchase money into court, but objected to accepting the

deed that had been deposited because plaintiff's "present wife had not joined therein, and in case of his death, she, surviving, would be entitled to dower in the land, or to a distributive share thereof under the intestate laws". In submitting the case to the court on the foregoing facts it was stipulated by the parties that, "if the court should be of opinion that she (plaintiff's wife) would not be so entitled after her husband's death, then an order to be made permitting the plaintiff to take the money out of court; otherwise, that he shall not do so until he files a deed executed by himself and his present wife".           ,

After observing generally that an escrow does not take effect until the performance of the stipulated condition, the court went on to say: "But this rule does not apply where justice requires a resort to legal fiction. When a feme sole delivers a deed as an escrow and marries before it ceases to be an escrow by second delivery, the relation back to time of first delivery becomes necessary to render the deed valid: 4 Kent's Com. 454"; (Here we may interpolate that the doctrine of relation back is adopted and discussed by the Supreme Court of the United States in Lykins v. McGrath, 184 U. S. 169). After observing that "the plaintiff, in the lifetime of his former wife, by articles of agreement, sold the land to Mary M. Kitch, one of the defendants", the court said that: "A contract for the sale of real estate is considered in equity a conversion of the land into money. The vendor's interest ceases to be real estate. . . . This conversion takes place, notwithstanding it may afterwards be defeated by the non-payment of the purchase money. The purchaser is considered the owner in equity of the land subject to the payment of the purchase money; he is regarded as the trustee of the purchase money for the vendor, and the vendor is treated as the trustee of the purchaser of the legal title: Longwell v. Bently, 11 Harr 99; 2 Casey

180. An agreement by the husband to convey before dower attaches, will, if enforced in equity, extinguish the claim to dower. In equity, lands agreed to be turned into money, or money into lands, are considered as that species of property agreed to be converted; and the right of dower is regulated in equity by the nature of the property in the equity view of it: 4 Kent's Com. 50": Ibid. In conclusion the court directed an order to be made permitting plaintiff to take the money out of court.

While the foregoing case presented a situation somewhat different from that in the instant case, the problem before the court was essentially the same, and in its discussion of the case, it laid down principles of law and equity which are pertinent to the present problem, and which clearly point the way to its solution. The husband acquired no right of curtesy in the land by his marriage for his wife brought to him only a paper title which she held as trustee for plaintiff. The most he may be fairly said to have acquired was the opportunity, by refusing to perform an act which could in no way injure him, to raise a future law suit contingent upon his surviving his wife, which he can not win if proof of the true facts are then available, and to permit him to persist in his recalcitrancy would needlessly damage the marketability of the plaintiff's title. In these circumstances his refusal to do what is necessary to enable his wife to fulfill her contract is arbitrary and capricious, and cannot be justified in the forum either of good morals or of technical equity. Equity, which always considers that as done which should have been done, will, likewise, once it has properly taken jurisdiction of a case, compel it to be done, whenever its performance will work no harm to the doer, and at the same time avert an unmerited injury to an innocent third party. Having acquired jurisdiction of the case, equity has plenary power to work out

full justice and put an end to unnecessary and harassing future litigation.

For the foregoing reasons we now reach the following conclusions of law in the case:

### Conclusions of law

1. The agreement for the sale of premises, 4262 Parkside Avenue, entered into on February 1, 1946, between Martin N. Gelber, agent for Leonora Goodman and David Lapida, plaintiff herein, and approved by defendant Leonora Goodman, now Leonora G. Jacobs, on February 2, 1946, is valid and subsisting.

2. Plaintiff is entitled to specific performance by Leonora G. Jacobs of said agreement of sale approved by her as aforesaid.

3. On February 2, 1946, defendant, Leonora G. Jacobs, had legal title to and was the owner of said premises, 4262 Parkside Avenue.

4. Under and by virtue of said agreement of February 1, 1946, David Lapida, plaintiff, became possessed of the full equitable title to said premises, and is entitled, upon payment by plaintiff of the balance of the purchase price therein provided for, to a formal deed of conveyance of said premises to him by defendant, Leonora G. Jacobs.

5. Defendant, George D. Jacobs, did not acquire any right by way of curtesy or otherwise in said premises by reason of his marriage to the said Leonora Goodman on February 24, 1946, and his refusal to join with his said wife in conveying said premises to plaintiff is without substantial justification or excuse, and is arbitrary and capricious, inasmuch as any conveyance of said premises by his said wife to plaintiff without his joining therein would tend to seriously damage plaintiff by creating an inequitable and fictitious cloud upon his title thereto.

6. David Lapida, plaintiff, is entitled to a decree against defendants, Leonora G. Jacobs and George D.

Jacobs, her husband, directing them to make conveyance of said premises, 4262 Parkside Avenue, as more fully hereinabove described, to plaintiff, in accordance with the terms of said agreement of sale, and to the performance by her of all and singular the covenants in said agreement made, upon payment by said plaintiff of the balance of the purchase money due, subject to such adjustments as may become necessary by reason of the wrongful refusal of the said defendants to complete said settlement and make such conveyance at the time provided for in said agreement.

7. Defendant, Daniel Goodman, has no present interest in this litigation, and the bill should be dismissed as to him.

Accordingly, we now enter the following decree nisi in the case:

### Decree nisi

And now, to wit, September 19, 1947, this case having come on to be heard upon bill, answer and proofs, upon consideration thereof, it is ordered, adjudged and decreed:

1. That defendants, Leonora Goodman Jacobs and George D. Jacobs, her husband, shall forthwith make settlement with plaintiff of the aforesaid agreement for the sale of said premises, 4262 Parkside Avenue, to plaintiff, and shall in all respects fully comply with and perform all the terms, conditions, and covenants on the part of said Leonora G. Jacobs in said agreement contained.

2. Upon failure or refusal by either, or both, of defendants to complete said settlement and make conveyance of said premises to plaintiff as hereinabove directed, leave will be given to plaintiff to apply for an order and decree directing the prothonotary to execute said agreement of sale for, and in the names of either or both said defendants, and to receive payment into court by plaintiff for the benefit of defendant,

Leonora G. Goodman, of the balance of the purchase price remaining due and payable to her.

3. The bill is dismissed as to defendant, Daniel Goodman.

4. Defendants, Leonora G. Jacobs and George D. Jacobs, shall pay the costs of this proceeding.

The prothonotary will enter this decree nisi, and give notice thereof to the parties or their counsel, and, unless exceptions thereto are filed within 10 days, either party may present to the court a form of final decree to be entered in the case.